BROAD-MIAMI COMPANY, APPELLANT, v. BOARD OF ZONING ADJUSTMENT OF THE CITY OF COLUMBUS, OHIO, APPELLEE.

Common Pleas Court, Franklin County.

No. 204097. Decided August 7, 1959.

142

*Messrs. Schwartz, Gurevitz & Schwartz,* for appellant.
*Mr. Russell Leach,* city attorney, and *Mr. Paul Scott,* assistant city attorney, for appellee.

LEACH, J. Under the zoning ordinances of the City of Columbus, East Broad Street from Parsons Avenue on the south and Hamilton Avenue on the north to Nelson Road is zoned as an AR-O District. A motel is not included within the terms of a permitted use within such district. Section 3325.05 City Code. The ordinances of such City establish a Board of Zoning Adjustment which is authorized in certain cases to grant

variances from the literal enforcement of such zoning ordinances. The Appellant herein made an application to the Board for such a variance, which application was denied by a 3 to 1 vote of the Board on January 30, 1959. Thereafter appellant appealed to this Court under the provisions of Sections 2506.01 to 2506.04, Revised Code.

Independently of the factual considerations involved, this case presents some interesting and somewhat far-reaching questions of law involving the interpretation of Sections 2506.01 to 2506.04, Revised Code. These sections were enacted by the General Assembly effective September 16, 1957, and so far as we can ascertain, have not been judicially interpreted.

Prior to that date, no appeal to the courts being provided, the action of a board of zoning adjustment either in granting or denying a variance, was final in the sense that it could be questioned only by way of an action in mandamus in which event the test was whether or not the board was guilty of an *abuse* of discretion. *State, ex rel. City Ice & Fuel Co.* v. *Stegner*, 120 Ohio St., 12; 58 Am. Jur., 1062.

The extent to which this rule has been changed by the enactment of Section 2506.01, et seq., Revised Code, is one of the considerations implicit herein. Under such appeal provisions, what now is the test by which a court weighs the final orders of such a board? The difficulty in determining such question arises from the fact that these statutes were drafted in sort of a "catch-all" style. These were made applicable to "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department or other division of any political subdivision of the state." They provide for a hearing limited to "the transcript of all the original papers, testimony and evidence offered, heard and taken into consideration in issuing the order appealed from," except as to cases where:
" * * *

"(A) The transcript does not contain a report of all evidence admitted or proffered by the appellant.

"(B) The appellant was not permitted to appear and be heard in person or by his attorney in opposition to the order appealed from:

"(1) To present his position, arguments and contentions;

"(2) To offer and examine witnesses and present evidence in support thereof;

"(3) To cross-examine witnesses purporting to refute his position, arguments and contentions;

"(4) To offer evidence to refute evidence and testimony offered in opposition to his position, arguments and contentions;

"(5) To proffer any such evidence into the record, if the admission thereof is denied by the officer or body appealed from.

"(C) The testimony adduced was not given under oath.

"(D) The appellant was unable to present evidence by reason of a lack of the power of subpoena by the officer or body appealed from or the refusal, after request, of such officer or body to afford the appellant opportunity to use the power of subpoena when possessed by the officer or body.

"(E) The officer or body failed to file with the transcript, conclusions of fact supporting the order, adjudication or decision appealed from; (,) in which case, the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party. At the hearing, any party may call as if on cross-examination, any witness who previously gave testimony in opposition to such party."

The criteria by which the Court tests the order of the Board is stated in all-encompassing language as contained in Section 2506.04, Revised Code.

"The court may find that the order, adjudication or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication or decision, or remand the cause to the officer or body appealed from with instructions to enter an order consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law pursuant to Sections 2505.01 to 2505.45, inclusive, Revised Code."

In our opinion the test or mental processes by which a court determines that an action (1) is "arbitrary or capricious"

is markedly different in degree from that employed in determining (2) that an action is "unreasonable," which, in turn, is markedly different from the test of whether the order (3) is unsupported by the *preponderance* "of reliable, probative and substantial evidence on the whole record." The terms (a) "unconstitutional" and (b) "illegal" pertain basically to questions of law and give rise to no serious problems of legislative interpretation. In the consideration of *factual* determinations, however (and particularly where, as here, the administrative tribunal is vested to a considerable degree with discretionary power), the question of *which* test to apply becomes of vital importance.

It is asserted by counsel for appellant that these statutes provide for "a trial de novo." In support of such assertion reliance is had on the fact that the statutes provide for a hearing "upon the transcript and such additional evidence as may be introduced by any party" where, as here, the testimony before the Board was not given under oath and where, as here, the "body failed to file with the transcript, conclusions of fact supporting the order." Reference is also made to the case of *Andrews* v. *Board of Liquor Control*, 164 Ohio St., 275, which held that the appellate proceeding in the Common Pleas Court under the Administrative Procedure Act relating to State agencies (Section 119.12, Revised Code). fell "short of providing for a trial *de novo*" but it does "provide for something beyond a mere law review." The Administrative Procedure Act, however, provides as to factual determinations but a single test, i. e. whether the order "is supported by reliable, probative and substantial evidence," and not, as here, three separate and distinct tests.

In considering this question, we believe that a Court should keep in mind the distinction between *procedure* and *substantial* law. It must also keep in mind the vital distinctions between *administrative* power and *judicial* power. 42 Am. Jur., 550, et seq.

"It is a well-settled general principle that nonjudicial functions cannot be exercised by or imposed upon courts, and statutes which attempt to make a court play a part in the administrative process by conferring upon it administrative or

legislative, as distinguished from judicial functions, may contravene the principle of separation of powers among the different branches of our government." 42 Am. Jur., 563.

On this basic principle, we would conclude that if the intent of the General Assembly was to make this Court a super administrator of all final orders of officers, boards, etc. of all political subdivisions of this State, it would have no such power. This would be the necessary effect of any holding that the appeal is truly *de novo* in the sense that the Court would, by appeal, possess all of the power of the tribunal appealed from. We must presume, however, that such constitutional limitations were borne in mind, and that no such intent existed. Thus, the language "unsupported by the preponderance of substantial, reliable and probative evidence" does not and cannot mean that a court in such an appeal may merely determine the issues in the light of the action the judge would have taken had he been a member of the Board whose order is being appealed. In order to confer the exercise of *judicial power*, it must mean something other than this.

If we construe the word "unsupported" as meaning that on the evidence the Board's action necessarily would be "unreasonable," we then have but two tests instead of three, either of which does involve the exercise of *judicial power*, i. e., the test of (1) whether the action is arbitrary or capricious and (2) whether the action is unreasonable. All actions which are "unreasonable" are not "arbitrary and capricious"; but all actions which are "arbitrary and capricious" necessarily also are "unreasonable." If the General Assembly intended that the unreasonableness test be employed in *all* appeals under Section 2506.01 et seq., Revised Code, no purpose would be served by the reference to "arbitrary" or "capricious." On the fundamental principle that all language of a legislative enactment is presumed to have some intelligible meaning, it would appear that the General Assembly, by its "catch-all" draftsmanship, intended that the court on appeal apply one or the other of such tests dependent on the issue which happened to be involved. By this device, it, of course, left a myriad of questions which must be resolved by court interpretation over the years.

In this case, and without a review of the evidence at this point, we can state that if the test is abuse of discretion (i. e. whether the action of the Board was arbitrary or capricious) we doubt if we could no other than affirm the order of the Board. On the other hand, if the test be simply that of unreasonableness, we conclude for the reasons stated hereafter that we must reverse the order of the Board.

The nearest analogous situation which we have found in Ohio is the case of *Mentor Lagoons, Inc.* v. *Zoning Board of Appeals of Mentor Township,* 168 Ohio St., 113. There an application had been made to the Board for a variance and had been denied. An *appeal* was then taken to the Common Pleas Court pursuant to the provisions of Section 519.15, Revised Code. ' The Common Pleas Court affirmed on the basis that there was no showing of "abuse of discretion." The Court of Appeals affirmed but the Supreme Court reversed and remanded to the Board of Zoning Appeals, holding that "it is not necessary for the Common Pleas Court to find that the board abused its discretion but it is sufficient if that court finds that the decision of the board in refusing to authorize the requested variance represents an unreasonable exercise of that discretion."

This being the test as to appeals from township boards of zoning adjustment under Section 519.15, Revised Code, prior to September 17, 1957, logic should compel the use of this same test in appeals from all boards of zoning adjustment under Section 2506.01 et seq., Revised Code, where these statutes include the terminology "unreasonableness" as a basis for reversal. We conclude therefore, that the judicial test or criteria herein is whether the order of the Board herein was "unreasonable." We might add that the Mentor Lagoons, Inc. case is important also in that it clearly illustrates that the test of unreasonableness is not the same as the test of abuse of discretion.

Before proceeding to a discussion of the merits of this case on the "unreasonableness" test, we probably should make some comment as to the claim of counsel for appellee in opening statement (but not referred to in briefs) that the appeal statutes in question are unconstitutional as applied to cities

148

in their employment of Home Rule powers. For the reasons already referred to, questions of unconstitutionality might have been involved if the statutes were construed as vesting in the courts by way of appeal *administrative* power. But as already stated, and certainly as necessarily implied in the Mentor Lagoons, Inc. case, the factual determination of "unreasonableness" is not a complete substitution of the Court for the administrative tribunal, and involves the exercise of judicial and not administrative power. Furthermore, zoning is the exercise of the *police* power and thus under the provisions of Art. XVIII, Sec. 3 of the Constitution, must not be "in conflict with general laws." It should further be noted that the validity of provisions authorizing appeals to courts from decisions of zoning boards has been upheld in a number of cases outside of Ohio. 58 Am. Jur., 1062; 117 A. L. R., 1128.

Turning now to the merits, the first question involved is whether the Board had the authority to grant the variance requested; for if of course the Board had no such authority, it would follow that this Court, on appeal, would have no such authority.

The authority of the Board is contained in Section 3309.06, City Code, which, so far as pertinent, reads:

"The Board of Zoning Adjustment shall have power, upon application in a specific case, when owing to special conditions a literal enforcement of the provisions of this Zoning Code will result in unnecessary hardship so to vary the application of such provisions in harmony with the public interest and with the spirit of this Zoning Code that substantial justice shall be done. When in its judgment the public interest will be substantially served or the appropriate use of neighboring property will not be substantially or permanently injured, the Board of Zoning Adjustment may, in a specified case, after public and direct notice to all property owners who may be affected and public hearing and subject to appropriate conditions and safeguards, determine and vary the application of the district regulations herein established in harmony with their general purposes and intent as follows:

"" * * *

" (c) Permit the extension of a non-conforming use or building upon the premises owned and occupied or adjacent to such

at the time of the passage of Ordinance 1540-58, provided such extension shall not be harmful to adjacent or neighborhood properties or to the general welfare. * * *

" * * *

"(m) Permit in any district any use or building deemed by the Board to be in general keeping with and appropriate to the uses or buildings authorized in such district, provided, however, that the Board shall not permit a use in any district that is especially prohibited by the provisions of Chapter 3349 or C. C. 3379.03."

Appellant is now the owner and operator of a motel at the northwest corner of such streets. One of the bases for its application is the assertion that it is merely asking for the extension of a non-conforming use under paragraph (c) of Sec. 3309.06 City Code. One of the considerations implicit in that theory of its application is whether such premises, being separated by Miami Ave., is "adjacent" within the meaning of such paragraph. This need give us no concern, however, since it has been stipulated (Stipulation No. 4) that such property is "adjacent" within the meaning of the ordinance. In view of such stipulation, it follows that the Board had the authority to grant such variance under paragraph (c), if other conditions required by the ordinance were met. Furthermore, it would appear, regardless of the stipulation, that such authority would exist in any event under paragraph (m), again assuming other required conditions were met.

The principal assertion of counsel for appellee appears to be that there has been no showing that the "literal enforcement" of the zoning ordinances "will result in unnecessary hardship," as those words are employed in the first paragraph of Section 3309.06 City Code. Here the *evidence* (and obviously we must make our factual determination solely from the evidence) compels the conclusion that a literal enforcement of the zoning ordinance would impose a "hardship" on the appellant in the sense that economic considerations require an expansion of existing facilities to include not only more rooms but also to provide restaurant facilities and meeting room facilities, which cannot be physically added to the northwest corner structure. Based on the needs and demands of the travelling public, the evidence also compels the conclusion that a literal

enforcement would impose a "hardship" on them, it appearing that 25 to 50 are turned away each night.

But, say counsel for appellee, the sole test of "unnecessary hardship" is whether the "property affected *cannot* reasonably be put to a conforming use." *City of East Chicago* v. *Sinclair Refining Co.*, 111 N. E. (2nd) 459 at page 464.

To the contrary, counsel for appellant assert, in effect, that the key to an interpretation of such phraseology is the word "unnecessary"; that the "hardship" imposed by a literal enforcement of the Zoning Code must be balanced on the scale of justice and common sense against the actual or potential harm which could possibly result to others if the application for variance be allowed. Many cases are cited to such effect.

Typical of such holdings is the following language from *St. Onge* v. *City of Concord*, 63 A (2nd) 221:

"Any hardship suffered by a property owner as a result of interference with owner's right to use property *without commensurate public advantage* * * * is an 'unnecessary hardship' within the meaning of statute empowering a Board of Adjustment to authorize variance from terms of ordinance." (Emphasis added.)

See also *Fortune* v. *Zoning Board of Adjustment*, 60 A. (2d), 133; *Moody* v. *City of University Park*, 278 S. W. (2d), 912; *Kaczorowski* v. *Elmhurst Stone Co.*, 141 N. E. (2d), 14; *Culinary Institute of America, Inc.* v. *Bd. of Zoning Appeals*, 121 A. (2d), 637; *Goldreser* v. *Bd. of Zoning Appeals*, 136 A. (2d), 789; *Moriarty* v. *Pozner*, 121 A. (2d), 527.

We do not find this problem to have been *specifically* discussed in any Ohio cases. In the *Mentor Lagoons, Inc. case*, *supra*, however, it seems to be discussed at least by way of necessary inference. We quote from the opinion of Taft, J. at page 120:

"In the instant case, there is no evidence that it would be 'contrary to the public interest' to authorize a variance so as to permit use of appellant's premises as a recreation area for polo, and such use would appear to accord with the spirit of the resolution. Certainly, if appellant is not permitted to so use its land, that will be a 'hardship' upon appellant. It is difficult for us to see any 'necessity' for the imposition of that hardship with respect to such a large parcel of land as is in-

volved in the instant case. The prevention of use of that land as a recreation area for polo could hardly have any more relationship to the health, morals, safety and welfare of the public than the prevention of its use for a 'golf course,' except perhaps in preventing a use for the keeping of horses which is a use that the township is expressly prohibited from preventing by its zoning resolution.''

As we interpret the language of Judge Taft, and bearing in mind that the Court, in effect, held that the action of the Board in denying a variance was ''unreasonable,'' it would seem to follow that the test there suggested involves a balancing of ''hardship'' against ''public interest,'' and is not limited in application to only those cases where the applicant proves that the property affected *cannot* reasonably be put to a conforming use. It, of course, might well be true that the exercise of a *sound* discretion would compel a denial of a variance in all cases where the property physically *could* be put to a conforming use if, on the other side of the balance scale of justice, it appeared that there were commensurate public advantages which would result from such a denial.

This conclusion is also fortified by the recognition that zoning is the exercise of the police power and is designed to promote public health, safety, morals, general welfare, etc.

Restrictions must be strictly construed with a free use of property in mind. *Hunt* v. *Held*, 90 Ohio St., 280; *Frederick* v. *Hoy*, 104 Ohio St., 292. While such free use of one's property must yield to restrictions and limitations which are reasonably necessary in order to secure commensurate benefits to others within the community, such use constitutionally cannot be made to yield to restrictions which find their foundation merely on the premise ''This is the letter of the law—obey it,'' and which secure no commensurate benefits to others.

We might add that these are the very considerations which have given rise to the creation of Boards of Zoning Adjustment. Their duty, somewhat akin to the duty of a Court of Equity, is to weigh such considerations in granting or denying an application for variance. In our opinion, this philosophy is reflected in the language of the ordinance itself. We agree with counsel for appellant that the key word is not ''hardship'' but

is the word "unnecessary." In considering whether *any* "hardship" is "unnecessary," considerations should be given to whether such variance would be "in harmony with the public interest and with the spirit of this Zoning Code that substantial justice shall be done," whether "the public interest will be substantially served," whether the "appropriate use of neighboring property" will "be substantially or permanently impaired" (first paragraph, Sec. 3309.06, City Code), whether the extension of a non-conforming use will be "harmful to neighborhood properties or to the general public" (paragraph [c]), and whether the variance use "would be in general keeping with and appropriate to the uses * * * authorized in such district" (paragraph [m]). All of the language is indicative of a legislative intent that the question of "hardship" should be weighed against commensurate public benefit, if any. Thus the same quantum of "hardship" might justify or require the granting of a variance in one case and its denial in another case, dependent upon the quantum of public benefit involved weighed against such "hardship."

In this case, the appellant is not the owner of the northeast corner lot in question at the present time but only has an option to purchase such. Does such fact preclude the appellant from asserting "unnecessary hardship" to it, to the owner and to the public? In our opinion, this question must be answered in the negative. See language of Skeel, J. in *Henle* v. *City of Euclid*, 97 Ohio App., 258, at page 263.

From the *evidence* adduced before this Court, we would conclude, as stated before, that there would be "hardship" to the appellant, to the owner and to the public. Turning to the *evidence* as to any commensurate benefit to any of the public, we find none. Certainly no considerations of public health, safety or morals are involved. What about "general welfare"? If traffic be considered, the evidence discloses that the specific proposed motel will accord ample off-street parking. If aesthetics or architectural design be considered, it is clear from the testimony of Mr. Musson, the architect, and indeed from the testimony of Mr. Bachtel, Director of City Planning, that the proposed structure is in keeping with the hoped-for development of East Broad Street from the standpoint of physical appearance. If we consider actual or even potential damage to

neighboring properties, we find that the neighbors have consented to such variance. While such fact is by no means conclusive, it should be taken into consideration. 58 Am. Jur., 1052. In any event, there was no evidence from which even an inference of potential damage or harm to neighboring properties could be inferred. What about potential damage or harm to any other members of the general public? Again, there is a complete lack of *any* evidence.

The only evidence as to any possible reason for denying the application is the testimony of Mr. Bachtel to the general effect that Council had not included motels in an AR-O District, and that if appellant were granted a variance on the theory of an extension of a non-conforming use "Where would it end." We note the same general philosophy in Mr. Bachtel's remarks to the Board as contained in the summary thereof in the transcript. If we were holding that appellant, having a non-conforming use at the northwest corner of Miami and East Broad, had a *right, regardless of any other considerations,* to extend such non-conforming use to the northeast corner, one might well ask "Where would it end?" This, however, is not our holding.

An AR-O District permits, among other things, an "apartment hotel." Regardless of what meaning might be attached to an "apartment motel" in daily speech, its meaning in this ordinance is defined in Sec. 3301.01, City Code, as "a building arranged, intended or designed to be occupied by five or more individuals or groups of individuals living independently but having a common heating system and general dining room." Since the building in question will have a common heating system and general dining room and be designed for occupancy by five or more individuals or groups of individuals, it would appear that the building might qualify as a permitted "apartment hotel" if appellant would merely forego the public use of the word "motel," which it declines to do. From the testimony of Mr. Bachtel and from the comments by the members of the Board, contained in the transcript, it would appear that there would be no real objection to the contemplated building and proposed usage, just so long as it was publicly called an "apartment hotel" insteal of a "motel." We mention this simply as being illustrative of the fact that neither in the

transcript nor in the evidence is there even any indication that the denial of the application would result in any commensurate benefit to the public or to any segment thereof. Surely there is no commensurate benefit to the public solely from the use of a name.

The Board failed to file with the transcript "conclusions of fact supporting the order," as referred to in paragraph (E) of Section 2506.03, Revised Code. While this statute does not purport to *require* the making of such conclusions of fact, it is evident from the fact that the failure to so file affords another basis for the taking of additional testimony before the Court that such conclusions of fact, if filed, might be considered by the Court, and thus throw light on the question of the "unreasonableness" of the order. In the instant case, after some initial comments by the individual members of the Board, a simple "aye" and "nay" vote was taken on a motion to deny the application.

Even these initital comments accorded no basis for saying that a finding was made that commensurate public benefits outweighed the harm or hardship which would result from a denial of the application. Some pertained to a need for re-zoning, some to the fact that if a "charge" were made, council should do it, and some to the question of whether the lands were "adjacent." It must be remembered, we believe, that every granting of a variance is not the same as a complete change of a zoning district. The former pertains to a single specific use and involves a consideration of all of the factors we have mentioned, plus others. Sec. 58 Am. Jur., 1045-1058. The latter permits *all* uses in the district, as amended or re-zoned.

We fully recognize the almost insurmountable difficulties attendant upon the laborious activities of a board of zoning adjustment, particularly in view of the fact that the members, almost universally, are part-time officials. What we say, therefore, is not said in any critical sense. In view, however, of the complex considerations which should govern their consideration in granting or denying a variance from the literal language of the zoning ordinances, and in view of the fact that by Section 2506.01, et seq., Revised Code, their final orders for the first time are subject to *appeal* to the courts, we have attempted to

explain in perhaps more detail than needed, just in what respects these basic considerations were overlooked in the instant case.

In conclusion, from a consideration of all of the evidence and of the transcript, we find that the order of the Board of Zoning Adjustment of the City of Columbus of January 30, 1959, denying the application of appellant, Broad Miami Company, to build and to operate a motel building at the northeast corner of Miami Avenue and East Broad Street in accordance with the architectural plans introduced into evidence herein, represent an unreasonable exercise of discretion. In accordance with the provisions of Section 2506.04, Revised Code, therefore, such order is reversed and final judgment to that effect rendered in favor of appellant at the costs of the appellee.

Entry may be prepared accordingly.