P & S Investment Co., Appellee, *v.* Brown et al., Appellants.

[Cite as P & S Investment Co. v. Brown (1974), 40 Ohio App. 2d 535.]

(No. 73 C. A. 47—Decided February 20, 1974.)

*Messrs. Henkin & Tatman,* for appellee.
*Mr. James L. Messenger,* for appellants.

Lynch, P. J. Defendants, appellants herein, are appealing the following judgment of the Court of Common Pleas:

"* * * this court finds that there is error in the finding of the Zoning Board of Appeals to the prejudice of the appellant in that the ordinances of Austintown Township do not prohibit the parking of trailers on the property of the appellant.

"It is therefore ordered, adjudged and decreed that the decision of the Board of Zoning Appeals of Austintown Township is overruled."

The Austintown Board of Zoning Appeals upheld the order of the Zoning Inspector to remove construction trailers from plaintiff's property on 3896 Mahoning Avenue, which is located in a Business B-2 district.

The building situated on these premises is a one story building fronting on Mahoning Avenue but extending back to a two story building in the rear. Behind the building is an additional area extending to the abutting street, which is Kenmar Court. There are residences located on Kenmar Court whose owners complained about the presence of construction trailers on plaintiff's property.

Plaintiff has occupied this building for approximately nineteen years. It is used primarily as the main office for a series of corporations whose business is the management and rental of approximately 1800 apartments owned by the various corporations. In one section of the building carpeting is stored, and there is sufficient space to cut it when it is needed for maintenance or replacement.

Behind the building, plaintiff has parked nine construction trailers which are used for storage of material and equipment used in the maintenance, repair and replacement of rental apartments. One of these trailers has been there approximately nine years. The remainder were parked there in the early part of 1972. Plaintiff's evidence is that the items stored in these trailers is used only for maintenance, repair or replacement purposes of existing rental apartments. They consisted of washers, dryers, stoves, furnaces, snow shovels, snow blowers, etc. Some of the items could be used in the construction business, but plaintiff has not been in the construction business for the past five years.

Defendants' first assignment of error is that the order of the lower court is contrary to statute and case law in that there is no finding that the decision of the Austintown Board of Zoning Appeals is unreasonable, arbitrary, or capricious.

Judge Osborn did not write an opinion in this case, and the language cited previously from his judgment entry is all that is in the record to indicate the basis of his

decision. We interpret his judgment as finding that the order of the Austintown Township Board of Zoning Appeals was illegal because the zoning ordinance of Austintown Township does not prohibit the parking of trailers on plaintiff's property, which is a Business B-2 district, under the circumstances of this case. This is a different fact situation than that of the cases of *Broad-Miami Co. v. Bd. of Zoning Adjustment*, 89 Ohio Law Abs. 140, and *Beerman v. Kettering*, 14 Ohio Misc. 149, which are cited by defendants, and which we feel are not applicable to this case. We overrule defendants' first assignment of error.

Defendants' second assignment of error is that the evidence and testimony before the Board of Zoning Appeals and the lower court was more than sufficient to sustain the finding of the Board that plaintiff's act of storing the construction trailers was violative of the uses permitted in a Business B-2 district.

Section X of the Zoning Ordinance pertains to Business B-2 district. This section first lists permitted uses which includes offices so that the principal use of the building on this property by plaintiff is permitted by this section.

Section X also sets out specific uses which are prohibited in a Business B-2 district, of which defendants listed the following prohibitions as pertinent to this case:

"(c) Junk yards, secondhand material yards and automobile graveyards and dissembly plants.

"(e) Commercial warehouses, lumber and coal yards, building material storage yards, loading and transfer stations and truck terminals.

"(k) Abandoned, wrecked or dismantled automobiles, trucks, trailers, farm equipment, aircraft, furniture or other miscellaneous materials."

To understand why defendants have cited paragraphs (c) and (k), it is necessary to consider the following background of this case. Plaintiff formerly was in the construction business. Most, if not all, of the trailers at issue apparently were acquired for construction purposes starting in 1958, and they were referred to by plaintiff's attor-

ney as construction trailers. Thus, one or more of these trailers is or are over fifteen years old and others are only a few years younger.

There are several pictures of these trailers among the exhibits. Most, if not all, of these trailers appear to have seen service on construction sites, and some appear to have seen considerable service for several years for such purpose. All the trailers appear to have been originally painted a red color that normally would not be used in residential or business districts: however, it is obvious that many years have elapsed since any paint has been applied to several of these trailers. We feel that the red color on these trailers is more associated with barns and railroad box cars than residential or business districts, and that the overall appearance of these trailers is in "sad" contrast with the general appearance of the surrounding neighborhood.

The action of the Zoning Inspector in ordering these trailers to be removed was initiated by adjacent resident property owners who complained, among other things, about the appearance of these trailers. At the hearing before the Austintown Board of Zoning Appeals, these resident property owners described these trailers as old junk trailers that are an eyesore to the neighborhood. We agree that this is a fair description of some of the trailers at issue in this case.

Plaintiff contends that the nine trailers at issue in this case are an accessory use to its business of managing and renting apartments. We agree that a reasonable quantity of most of these items stored in these trailers could be stored on plaintiff's property providing that the storage was done in conformity with the permitted uses of this district under the Austintown Township zoning ordinance. The storage of carpeting material in the main building is not at issue in this case, but if it was we would hold that this would be a permitted use. Likewise, if plaintiff had built an extension of its building in conformity with its present building for the storage of the items presently stored in these trailers, we would be inclined to hold that

that would be a permitted use. Our only reservation would be the unanswered question in the case of whether all the items stored in these trailers are reasonably necessary for the purposes of plaintiff's business, or whether they are surplus building material left over from the time that plaintiff was in the construction business that it is saving for some possible use, which has no reasonable relationship with its present business.

As to the items stored in these trailers that are reasonably necessary for plaintiff's business, the question is whether the method used by plaintiff in storing such items in nine construction trailers is a permitted use in a Business B-2 district. This method is acceptable at construction sites, but such use is a temporary one pending construction. If such construction trailers remained permanently at the site after the construction, the same question would arise that is presently in this case as to whether the parking of a construction trailer for an indefinite period of time independent of any construction is a permitted use in such district.

In the instant case, one trailer was parked on plaintiff's property for nine years without objection. However, when eight more were added in 1972, the neighbors objected. This illustrates another dimension to this case; namely, assuming that the use by plaintiff of one construction trailer on its property was a reasonable accessory use for storage purposes, does the addition of eight more such trailers make such use unreasonable? If so, at what number does the use of such trailers become unreasonable?

Prior to five years ago, plaintiff was in the construction business. If it had continued in such business and used its property as a temporary parking place of construction trailers between different construction jobs, this would have presented a different fact situation because such use of plaintiff's property would be temporary and it would be unlikely that up to nine such trailers would be parked on plaintiff's property at one time.

However, plaintiff is no longer in the construction business, and these trailers are not being used for the pur-

poses of construction but for storage purposes for plaintiff's business of management and rental of approximately 1800 apartments. Their use at this site is no longer temporary; it is now for an indefinite period of time extending to approximately two years. Although these trailers have wheels and can be readily moved, plaintiff has not seen fit to move them since 1972; therefore, we conclude that their use on plaintiff's property is semi-permanent in nature.

Obviously, plaintiff's property is not a construction site, and the uses permitted on a construction site would be different in many ways than those permitted in an established business district. In both cases, there is a storage problem, and the question is whether the identical method of storage in construction trailers used on construction sites can be used in business districts. We feel that the reaction of plaintiff's neighbors to such use by plaintiff of nine construction trailers is typical of what the reaction of most people in urban communities would be.

We conclude that the pertinent reasons for the objections of plaintiff's neighbors to the use of the nine construction trailers on its property is, in effect, that the use of such trailers for storage purposes does not comply with the general appearance of the permitted uses in a Business B-2 district, and for the specific reason that such use is specifically prohibited under Section X (e) as a "building material storage yard."

Neither side has briefed the question of the definition of a "building material storage yard," and we were unable to find any pertinent law on either the definition or what is included in the language of a "building material storage yard."

The record reveals that some of these items could be used in the construction business; therefore, some of these items are building materials. None of these items are being sold to other people, but they are being used in plaintiff's present business. We feel that this fact should be considered, among other things, on the question of whether this use is a building material storage yard, but that fact,

in itself, is not determinative of this question. We also feel that building materials can be used in repair of existing buildings as well as in original construction; therefore, in our opinion, the fact that plaintiff is no longer in the construction business does not change the nature of the building materials stored in these trailers.

However, the question arises as to whether the fact that this building material is stored in construction trailers has the effect of removing this use from the prohibited use of building material storage yard. Neither side briefed this question.

As we have previously indicated, we feel that plaintiff could store most, if not all, of the items stored in these trailers by methods in compliance with the permitted uses in this district; however, the determinative question in this case is whether plaintiff's method of storing building material is a permitted use in a Business B-2 district.

In the instant case, plaintiff took trailers used for storage of building material at construction sites and removed them to a Business B-2 district for the same use without any attempt to adapt them to such district either by painting or by screening them in some way from adjacent residential property owners. It is questionable whether the storage of the building material on the yard of plaintiff's property would detract from the general appearance of the rear end of plaintiff's property any more than some of the trailers in which these items were stored. If plaintiff had a legal right to use these trailers on its property, we feel that its insensibility in desecrating the appearance of this neighborhood with some of these trailers is indefensible.

However, we find that the question of whether plaintiff's use of these construction trailers for the storage of building materials makes its yard a building material storage yard, which use is prohibited in a Business B-2 district, is a mixed question of fact and law. As we have already stated, no law pertinent to this question has come to our attention. We, therefore, find that this was a proper question for the Austintown Township Board of Zoning Appeals to decide. There is a presumption of regularity

for the decision of the Austintown Township Board of Zoning Appeals that plaintiff's use of the construction trailers for the storage of building materials makes its yard a building material storage yard. *McCauley* v. *Ash*, 97 Ohio App. 208.

Although we find that plaintiff's use of these trailers on his property does not come under the specific prohibited uses set out in paragraphs (c) and (k) of Section X of this zoning ordinance, these paragraphs have some pertinency in that they concern the appearance of a Business B-2 district. This could be considered an aesthetic purpose, and plaintiff has pointed out the long established law in Ohio that an aesthetic reason alone, unrelated to the requirements of the public health, safety or welfare, will not justify a limitation upon the use of private property. *Wondrak* v. *Kelley*, 129 Ohio St. 268; *City of Youngstown* v. *Kahn Bros. Building Co.*, 112 Ohio St. 654; *State, ex rel. The Killeen Realty Co.*, v. *City of East Cleveland*, 169 Ohio St. 375 at page 383; 58 Ohio Jurisprudence 2d 530, Zoning, Section 56.

However, the law in Ohio and the rest of the country on aesthetic considerations in zoning has been changing in recent years. This law was not briefed by either party, and probably was not called to the attention of the trial judge. We are aware of such law because of other cases that were before this court.

1 Yokley, Zoning Law and Practice 28 (3rd ed.), states as follows:

"The concentration of population in urban areas has forced a readjustment in our thinking respecting some of our former concepts of zoning. This is especially true in the realm of esthetics. With ever-increasing frequency, the courts lean more favorably toward a consideration of esthetics as a major factor in the enactment of zoning ordinances under the police power."

See Anderson, American Law of Zoning 520, Section 7.21; Annotation 21 A. L. R. 3d 1222, 1235; *People* v. *Goodman*, 31 N. Y. 2d 262, 338 N. Y. S. 2d 97.

In 1968, the Ohio Supreme Court had the issue of aesthetics in zoning regulations before it in the case of

*State* v. *Buckley*, 16 Ohio St. 2d 128 (appeal dismissed 395 U. S. 163. The first paragraph of the syllabus reads as follows:

"Sections 4737.05 to 4737.99, Revised Code, which require junk yards outside of a municipality to be obscured from the ordinary view of persons passing upon state, county and township roads, are a valid exercise of the police power although they are based upon aesthetic considerations."

Excerpts from the court's decision, taken from pages 132 and 133, are as follows:

"We think that aesthetic considerations can support these statutes, because interference with the natural aesthetics of the surrounding countryside caused by an unfenced or inadequately fenced junk yard is generally patent and gross, and not merely a matter of taste. Certainly the junk yard here, wherein junk cars are stacked so that they are visible many feet above the top of the fence, is patently offensive, and it cannot be effectively argued in this case that the statutes would be unconstitutional as applied, either because the offensiveness of this fact situation is only a matter of taste or because the surrounding area had no aesthetic value to preserve. * * *

"This holding is not to be construed as a blanket approval of all regulation based upon aesthetics."

In 1969, in the unreported case of *Board of Trustees of Beaver Township* v. *Reiter*, Mahoning County Court of Appeals No. 4765, this court upheld the constitutionality of a similar ordinance to paragraph (c) of Section X of the Austintown Township Zoning Ordinance.

We hold that when the appearance of a use in violation of permitted uses in a particular zone is in such gross contrast to the permitted uses of such zone as to be patently offensive, the order of a township board of zoning appeals to prohibit such use is a valid exercise of the police power although such order is based upon aesthetic considerations.

Upon review of the record of this case, we find that the use of some of these trailers in their present condition on plaintiff's property is in such gross contrast to the per-

mitted uses of a Business B-2 district as to be patently offensive. We further find that the decision of the Austintown Township Board of Zoning Appeals as to some of these trailers is supported by the preponderance of substantial, reliable and probative evidence in the record of this case.

Our decision is based on law that apparently was not brought to the attention either of the Austintown Township Board of Zoning Appeals or the trial court, and our decision is not an entire victory or defeat for either side. It will require a remanding to the Austintown Township Board of Zoning Appeals for further consideration in accordance with this opinion of which trailers of plaintiff are a permitted use in a Business B-2 district and under what conditions such trailers may remain on plaintiff's property in accordance with our opinion. Since plaintiff had reason to rely on long established law that an aesthetic purpose could not be considered for zoning purposes, we suggest that it be given a reasonable opportunity to adopt its use of these trailers in a manner that would conform to a permitted use under Section X of the Austintown Township Zoning Ordinance.

*Judgment reversed.*

Donofrio and O'Neill, JJ., concur.