VILLAGE OF HUDSON, APPELLEE, *v.* ALBRECHT, INC. ET AL., APPELLANTS.

[Cite as Hudson *v.* Albrecht, Inc. (1984), 9 Ohio St. 3d 69.]

(No. 83-142—Decided January 25, 1984.)

70

*Mr. Charles E. Merchant* and *Ms. K. J. Montgomery,* for appellee.

*Messrs. Brouse & McDowell, Mr. Joseph M. Holden* and *Mr John W. Solomon,* for appellants.

J. P. CELEBREZZE, J. The planning and zoning code for the village of Hudson is contained in Part Twelve of the village's Codified Ordinances. The specific portion of Part Twelve which concerns the instant appeal is Chapter 1204.

Section 1204.03 of that chapter creates an Architectural and Historic Board of Review. The function of that body is set forth in Section 1204.01:

"(a) *Generally.* The *Architectural and Historic Board of Review hereinafter created shall serve to protect and preserve the value, appearance and use of property on which buildings are constructed or altered,* to maintain a high character of community development, to protect the public health, safety, convenience and welfare and to protect real estate within the Municipality from impairment or destruction of value. Such purposes shall be accomplished by the Board by regulating, according to accepted and recognized architectural principles, the design, use of materials, finished grade lines, dimensions, orientation and location of all main and accessory buildings to be created, moved, altered, remodeled or repaired, subject to the provisions of Zoning and Building Codes and other applicable ordinances of the Municipality. In reviewing, regulating and approving building plans, the Board shall consider and take cognizance of the development of adjacent, contiguous and neighboring buildings and properties for the purpose of achieving safe, harmonious and integrated development of related properties." (Emphasis added.)

In advancement of this section, the board has authority under Section 1204.06 to review all applications for building permits following their approval by the building inspector. Section 1204.08 provides that no building permit shall be issued unless the applicant submits drawings and specifications and establishes the following:

"* * *[a](2)   The exterior architectural character and functional plan of the proposed structure, when erected, will not be at such variance with existing structures, or structures currently being built, in the immediate

neighborhood or zoning district as to cause substantial depreciation in the property values of such existing structures or structures currently being built;

"(3) The site utilization and orientation of the proposed structure is reasonably integrated with existing roads, drives, vehicular traffic patterns and pedestrian walkways abutting the property upon which the proposed structure is to be built; and

"(4) The proposed structure does not violate the 'look-alike' provisions of subsection (b) hereof.

"(b) No building permit shall be issued in a Residence District for an application to erect, construct, alter or remodel any building or structure which shall be like or substantially like any neighboring structure, hereinbefore defined, then in existence or for which a building permit has been issued. The Board shall approve such application unless the applicant fails to establish that no more than two of the following exist with respect to any such neighboring structure:

"(1) The roof style of the proposed structure is similar to the structure it resembles;

"(2) The roof pitch of the proposed structure is less than three vertical units in twelve from the structure it resembles;

"(3) More than half of the exterior surface materials of the proposed structure are the same as the structure it resembles;

"(4) The relative location of an attached garage, porch, portico, breezeway, gable or other major design feature attached to the proposed structure is similar to the structure it resembles; or

"(5) The relative location of entry doors, windows, shutters or chimneys in the proposed construction is similar to the structure it resembles."

In this appeal, appellants assert that the Hudson regulations are unconstitutional as they are concerned solely with aesthetics.

We begin our discussion of this issue by noting that a strong presumption exists in favor of the validity of the ordinance. *Downing* v. *Cook* (1982), 69 Ohio St. 2d 149, 151 [23 O.O.3d 186]; *Brown* v. *Cleveland* (1981), 66 Ohio St. 2d 93, 95 [20 O.O.3d 88]. It is firmly established that the party challenging a legislative enactment bears the burden of demonstrating its unconstitutionality. *Mayfield-Dorsch, Inc.* v. *South Euclid* (1981), 68 Ohio St. 2d 156, 157 [22 O.O.3d 388]; *Hilton* v. *Toledo* (1980), 62 Ohio St. 2d 394, 396 [16 O.O.3d 430]. As long as the validity of the legislation is "fairly debatable," the legislative judgment in enacting it is permitted to control. *Brown* v. *Cleveland, supra,* at 98; *Willott* v. *Beachwood* (1964), 175 Ohio St. 557, 560 [26 O.O.2d 249]; *Curtiss* v. *Cleveland* (1959), 170 Ohio St. 127 [10 O.O.2d 85], paragraph three of the syllabus. See, generally, *Euclid* v. *Ambler Realty Co.* (1926), 272 U.S. 365. The basis for this presumption is that the local legislative body is familiar with local conditions and is therefore better able than the courts to determine the character and degree of regulation required.

*Wilson* v. *Cincinnati* (1976), 46 Ohio St. 2d 138, 142 [75 O.O.2d 190]; *Allion* v. *Toledo* (1919), 99 Ohio St. 416, paragraph one of the syllabus.

We further note that the right of the individual to use and enjoy his private property is not unbridled but is subject to the legitimate exercise of the local police power. See Section 3, Article XVIII of the Ohio Constitution. This power includes the authority to impose zoning regulations, although such regulations must conform to certain standards. Since the object of the police power is the public health, safety and general welfare, its exercise in order to be valid must bear a substantial relationship to that object and must not be unreasonable or arbitrary. *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535 [26 O.O. 116], paragraph one of the syllabus.

Some Ohio cases pertaining to the issue of aesthetics have stated that such consideration alone does not justify the exercise of the police power. *State, ex rel. Killeen Realty Co.,* v. *East Cleveland* (1959), 169 Ohio St. 375, 383 [8 O.O.2d 409]; *Wondrak* v. *Kelley* (1935), 129 Ohio St. 268 [2 O.O. 159], paragraph three of the syllabus; *Youngstown* v. *Kahn Bros. Building Co.* (1925), 112 Ohio St. 654, 661; *Pritz* v. *Messer* (1925), 112 Ohio St. 628, 638. These decisions rest upon the idea that aesthetic tastes vary greatly among different people and are therefore too impractical and inconsistent a basis to be used in restricting property. *State, ex rel. Killeen Realty Co.,* v. *East Cleveland, supra,* at 383; *Youngstown* v. *Kahn Bros. Building Co., supra,* at 661. The cases also reflect the thought that aesthetics is not a concern of the public health, safety or general welfare, but is, at most, an incidental or secondary reason for enacting legislation.

It is noteworthy, however, that the nature of the police power is elastic, as it must be able to expand or contract in response to changing conditions and needs. See *Euclid* v. *Ambler Realty Co., supra,* at 387; *Cincinnati* v. *Correll, supra,* at 540. As such, more recent Ohio cases dealing with both zoning and nuisance issues have implied that there is a governmental interest in maintaining the aesthetics of the community and have recognized its role in the exercise of the police power.

One example is the case of *Ghaster Properties, Inc.* v. *Preston* (1964), 176 Ohio St. 425 [20 O.O.2d 51], which upheld a statute prohibiting the erection or maintenance of advertising devices adjacent to the interstate highways. Writing for a unanimous court, Chief Justice Taft held in that case that the "general welfare" aspect of the police power is broad in nature and may include considerations which are essentially aesthetic:

"In considering whether a proposed statute prohibiting billboards adjacent to a highway bears a real and substantial relation to the public welfare, the *General Assembly may properly give weight not only to its effect in promoting public safety but also to its effect in promoting the comfort, convenience and peace of mind of those who use the highway by removing annoying intrusions upon that use."* (Emphasis added.) *Id.* at paragraph six of the syllabus.

Later, in *State* v. *Buckley* (1968), 16 Ohio St. 2d 128, 133 [45 O.O.2d 469], this court set forth an exception to the rule that a legislative enactment could

not be based exclusively on aesthetic considerations. That case upheld a statute requiring junkyards outside a municipality to be obscured from the ordinary view of persons passing upon state, county and township roads. The majority opinion reasoned that unfenced or inadequately fenced junkyards are patently offensive, rather than objectionable merely as a matter of taste. *Id.* at 132.

In *Buckley*, this court specifically declined to give blanket approval to all regulations based solely upon aesthetics. *Id.* at 133. Nonetheless, the evolving trend had been to grant aesthetic considerations a more significant role.[1] We believe that this is the correct approach as the appearance of a community relates closely to its citizens' happiness, comfort and general well-being. Accordingly, it is our finding that there is a legitimate governmental interest in maintaining the aesthetics of the community and that, as such, aesthetic considerations may be taken into account by the legislative body in enacting zoning legislation.

In the matter at hand, it is clear from the evidence presented, as well as the language of Section 1204.01, that aesthetics was of concern to the village council in enacting the zoning ordinance. In light of our discussion above, however, we find that this does not alter the validity of the ordinance.

Moreover, we further find that the ordinance does not rest solely upon aesthetic considerations. Rather, Section 1204.01 also reflects a concern for the monetary interests of protecting real estate from impairment and destruction of value. We believe that these goals are includable under the general welfare aspect of the municipal police power and may therefore justify its reasonable exercise.

Based upon the foregoing analysis, we must reject appellants' contention that the village zoning ordinance is not substantially related to the public health, safety and general welfare and is thus an invalid exercise of the local police power.

Appellants also propose that the Hudson ordinance is unconstitutional in that it fails to set forth sufficient standards to guide the board in reviewing applications for building permits.

It is the function of the legislative body to determine policy and to fix the legal principles which are to govern in given cases. See *L. & M. Investment Co.* v. *Cutler* (1932), 125 Ohio St. 12, 22. However, it is not possible for the legislature to design a rule to fit every potential circumstance. As such, legislation may be general in nature, and discretion may be given to an administrative body to make subordinate rules, as well as to ascertain the facts to which the legislative policy applies. *Id.* at 21; *Belden* v. *Union Central Life Ins. Co.* (1944), 143 Ohio St. 329, paragraph three of the syllabus. In order to

---

[1] This trend has also been evidenced in several appellate court decisions. See, *e.g., Pepper Pike* v. *Landskroner* (1977), 53 Ohio App. 2d 63, 72-73 [7 O.O.3d 44]; *Euclid* v. *Fitzthum* (1976), 48 Ohio App. 2d 297, 300 [2 O.O.3d 278]; *P&S Investment Co.* v. *Brown* (1974), 40 Ohio App. 2d 535, 542-543 [69 O.O.2d 460]; *Reid* v. *Bd. of Review* (1963), 119 Ohio App. 67, 72 [44 O.O. 27].

be valid, however, the legislative enactment must set forth sufficient criteria to guide the administrative body in the exercise of its discretion. *State, ex rel. Selected Properties, Inc., v. Gottfried* (1955), 163 Ohio St. 469 [56 O.O. 397].

In the present case, Section 1204.01 of the ordinance declares the broad policies to be advanced — the protection and preservation of the value, appearance and use of property; the maintenance of a high character of community development; and the protection of real estate from impairment or destruction of value. In order to accomplish this policy, the board is given authority to regulate various aspects of all structures to be built or modified. In exercising its authority, the board is to be guided by "accepted and recognized architectural principles," as well as other provisions of the zoning code and ordinances of the village. In particular, Section 1204.08 of the code lists other standards to be followed which take into account the proposed structure's harmonious development with existing buildings, as well as its reasonable integration with vehicular and pedestrian traffic patterns.

It is our view that these sections set forth all the standards reasonably necessary to guide the board in the exercise of its discretion and that, therefore, the ordinance does not constitute an unlawful delegation of legislative authority.

For the reasons herein stated, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER and HOLMES, JJ., concur.

C. BROWN, J., dissents.

CLIFFORD F. BROWN, J., dissenting. The decision of the court in this case effectively eliminates the need for local governmental bodies to enact zoning regulations which bear a rational relationship to legitimate police powers, under Section 3, Article XVIII of the Ohio Constitution. While the court cites *Cincinnati* v. *Correll* (1943), 141 Ohio St. 535 [26 O.O. 116], it then discounts paragraph one of the syllabus which requires a "substantial relationship" between the objective of a statute and the public health, safety and general welfare.

Zoning ordinances which look to aesthetics for their basis have also caused difficulties in jurisdictions other than Ohio. To overcome the ancient philosophical debate over the basis for aesthetic judgments, one expert in this area, Professor Michelman, has suggested legal systems look to the impact that various land uses have on neighboring property values.[2] This tie to prop-

---

[2] Michelman, Toward a Practical Standard for Aesthetic Regulation (Feb. 1969), 15 Prac. Law No. 2, 36.

erty values seems to be accepted by the court in its opinion as a rational relation to the enunciated police powers found in the Ohio Constitution. However, Michelman goes on to explain that only when an activity causes a decline of property values of neighboring parcels is there evidence that the activity is "* * * by a social consensus deemed intrinsically ugly, negatively suggestive, or destructive of prior existing beauty."[3]

In the present case the actions of appellants in no way impacted on the surrounding property values. Acme Store Number 4 is located in a shopping center. The changing of glass panels to aggregate panels does not affect the surrounding neighborhood.[4] Under the test enunciated by Michelman such action is not deemed to intrude on the aesthetics of the area.

One of the most commonly articulated reasons courts have given for being reluctant to sanction purely aesthetic regulations, even when those regulations are superficially tied to interests such as property value, is that aesthetics is a question of personal taste. What is aesthetically pleasing to one individual is an affront to the senses of another. This does not mean one individual is right and the other is wrong; rather, it merely means their tastes differ and governmental bodies should be very cautious about imposing the personal taste of one individual on another. Zoning as endorsed by *Village of Euclid* v. *Ambler Realty Co.* (1926), 272 U.S. 365, was never meant to be a vehicle to enforce the personal taste of one on another. The purpose was to allow for the controlled and orderly growth of cities. There are many legitimate interests which should be protected by zoning. Aesthetics alone is not one of these.

The village of Hudson concedes, and this court agrees, that aesthetic considerations alone will not justify zoning restrictions. *State* v. *Buckley* (1968), 16 Ohio St. 2d 128, 132-133 [45 O.O.2d 469]; *Youngstown* v. *Kahn Bros. Building Co.* (1925), 112 Ohio St. 654. However, this court improperly accepts the contention of the village that the zoning ordinance does not rest solely upon aesthetic considerations because Section 1204.01 "also reflects a concern for the monetary interests of protecting real estate from impairment and destruction of value." This quoted portion of the court's opinion is predicated upon the following vague, unstable zoning ordinance language, namely:

"1204.01 purposes.

"(a) *Generally.* The Architectural and Historic Board of Review hereinafter created shall serve * * * to protect real estate within a Municipality from impairment or destruction of value. * * *"

This is just a goal. Nowhere in the record in this case is there any evidence that the prohibited act of the defendant, namely, replacing a long row of plate glass windows from a store building with solid stone aggregate

---

[3] *Id.* at 36, 37.

[4] See dissent in *Consolidated Management, Inc.* v. *Cleveland* (1983), 6 Ohio St. 3d 238, 243.

panels, causes an "impairment or destruction" of value of real estate within the municipality.

The ordinance provision utilized to prohibit the stone panels is based upon aesthetic considerations alone and is unconstitutional. The statutes in *Ghaster Properties, Inc.* v. *Preston* (1964), 176 Ohio St. 425 [27 O.O.2d 388], cited by this court in its opinion, did not rest upon aesthetics alone but validly prohibited large billboards along interstate highways in order to promote public safety as well.

This zoning case has now placed us in the era of Orwell's "1984" where Big Brother tells us what to do and think in a realm that is protected by the constitutional right of privacy under the First Amendment to the United States Constitution. *Roe* v. *Wade* (1973), 410 U.S. 113, 152; *Stanley* v. *Georgia* (1969), 394 U.S. 557; *Griswold* v. *Connecticut* (1965), 381 U.S. 479; see Williams, Subjectivity, Expression and Privacy: Problems of Aesthetic Regulation (1977), 62 Minn. L. Rev.; Note, Architecture, Aesthetic Zoning, and the First Amendment (1975), 28 Stan. L. Rev. 179, 184.

If a zoning code regulation or restriction devoted solely to aesthetic considerations, as in this case, can be bootstrapped to the status of lawfulness by merely adding a provision somewhere in the zoning code that the purpose of the zoning regulation is to protect real estate "from impairment or destruction of value," then any zoning code provision, no matter how absurd, unreasonable or confiscatory can be given the aura of lawfulness.

One constraint on zoning regulations which the majority summarily dismisses is that such regulations must not be arbitrary or vague. *Cincinnati* v. *Correll, supra,* at paragraph one of the syllabus, requires that zoning regulations, "* * * must not be arbitrary, discriminatory, capricious or unreasonable * * *."

A New Jersey court when faced with an ordinance similar to the one involved in this case invalidated that portion of the ordinance concerned with architectural standards. The court in *Morristown Assoc.* v. *Mayor of Bernardsville* (1978), 163 N.J. Super. 58, 394 A. 2d 157, reasoned that:

"* * * The basic criterion for design review under the ordinance is *harmony* with existing structures and terrain. The standard does not adequately circumscribe the process of administrative decision nor does it provide an understandable criterion for judicial review. It vests the design review committee, as well as the planning board, with too broad a discretion, and permits determinations based upon whim, caprice or subjective considerations. Harmony of design and appearance is conceptual. A proposal which is considered harmonious and appropriate by one person may be deemed displeasing by another. A standard which permits such evaluations does not meet the test of certainty and definiteness required of zoning regulations. * * * This deficiency likewise precludes the measurement of the reasonableness of a design approval or disapproval, thereby preventing a reviewing court from effectively determining when a decision has been arbitrary or capricious. The portions of the subject ordinance which dictates [*sic*] standards for architec-

tural design must therefore be invalidated as impermissibly vague and indefinite." *Id.* at 67-68.

A close examination of the village of Hudson ordinance which sets forth the standards of review, Section 1204.01(a), reveals that it is based on vague standards which are beyond any real definition or interpretation.[5] The allowance of such standards of review vests in the board of review absolute power to impose its will on the private property interests of citizens of the village of Hudson, without any meaningful criterion of review existing for the courts which may be called on to examine the board's findings. Such power is beyond the Constitution of the state of Ohio, as well as the United States Constitution.

The opinion of the court has set the stage in Ohio for local governments to enact any restriction on private land usage they desire. This court has made it perfectly clear that it does not require those restrictions to meet the rational relationship test. The court does not even require such restrictions to meet constitutional standards of review for vagueness. Under such a system, bribery will become the only way landowners of the future will be able to effect any reasonable and proper change with regard to the use of their properties.

It is for these reasons that I dissent from the majority and would reverse the decision of the court of appeals.

---

[5] Section 1204.01(a) of the village of Hudson Zoning ordinance reads in pertinent part:

"* * * In reviewing, regulating and approving building plans, the Board shall consider and take cognizance of the development of adjacent, contiguous and neighboring buildings and properties for the purpose of achieving safe, harmonious and integrated development of related properties."