JOURNAL ENTRY and OPINION
Appellant BP America, Inc. (BP) appeals the trial court's judgment affirming appellee Council of the City of University Heights' (City) denial of BP's application for building improvements. BP assigns the following five errors for our review:
 I. THE LOWER COURT ERRED AS A MATTER OF PROCEDURAL LAW IN FAILING TO FOLLOW THE APPLICABLE STANDARD OF REVIEW FOR ADMINISTRATIVE APPEALS TAKEN PURSUANT TO CHAPTER 2506 OF THE OHIO REVISED CODE.
 II. THE LOWER COURT ERRED AS A MATTER OF PROCEDURAL LAW IN FAILING TO ADMIT THE SUPPLEMENTAL TRANSCRIPT OF PROCEEDINGS BEFORE THE COUNCIL OF THE CITY OF UNIVERSITY HEIGHTS TAKEN BY A DULY AUTHORIZED COURT REPORTER FOR THE STATE OF OHIO AND FILED BY APPELLANT BEFORE TRIAL.
 III. THE LOWER COURT ERRED IN RULING THAT THE LIMITATIONS IMPOSED UPON MUNICIPALITIES BY SECTION 3 OF ARTICLE XVIII OF THE OHIO CONSTITUTION DID NOT PRECLUDE THE COUNCIL OF THE CITY OF UNIVERSITY HEIGHTS FROM ENGAGING IN THE REGULATION OF THE SALE OF ALCOHOLIC BEVERAGES THROUGH ADMINISTRATIVE ACTION WHEN SUCH REGULATION CONFLICTS WITH THE GENERAL LAWS.
 IV. THE LOWER COURT ERRED IN FINDING THAT THE ACTION OF THE COUNCIL OF THE CITY OF UNIVERSITY HEIGHTS DENYING APPELLANT'S APPLICATION FOR A LOT CONSOLIDATION DID NOT VIOLATE THE VESTED RIGHT OF APPELLANT AS A PROPERTY OWNER IN THE USES TO WHICH THE PROPERTY HAS BEEN LAWFULLY DEVOTED SO THAT DENIAL OF SUCH RIGHT IS PROHIBITED BY THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE RIGHTS TO LIBERTY AND PROPERTY GRANTED BY SECTIONS 1 AND 19 OF ARTICLE I OF THE OHIO CONSTITUTION, THE BILL OF RIGHTS.
 V. THE LOWER COURT ERRED IN FINDING THAT THE ACTION OF THE COUNCIL OF THE CITY OF UNIVERSITY HEIGHTS DENYING APPELLANT'S APPLICATION FOR A LOT CONSOLIDATION DID NOT CONSTITUTE UNAUTHORIZED ADMINISTRATIVE ACTION WITHOUT STANDARDS ESTABLISHED BY RULES APPLIED UNIFORMLY.
Having reviewed the record and the legal arguments of the parties, we affirm the trial court's decision. The apposite facts follow.
BP owns two parcels of land at Fairmount Circle. One parcel of land is zoned U-7 Local Retail District. The abutting parcel is zoned U-3 Automobile Parking. In 1986, Sohio, BP's predecessor in interest, applied to consolidate its lots and rezone the U-3 Automobile Parking parcel to U-7 Local Retail in order to build a Pro-Care Service Center and a six hundred thirty sq. ft. mini-mart kiosk. The City initially denied BP's application. However, the parties later reached an agreement permitting Sohio to go forward with the project under the following restrictions:
 1. The size of the kiosk will be reduced to a 288 sq. ft. facility as described; it will be 12' high and 24' long; 2. no beverage or food sales from the kiosk — only motor-vehicle related items will be sold; Sohio agrees that NO food will be sold; the sale of cigarettes is permitted.
 3. the splitting and consolidation of the two lots as discussed this evening will commence; one lot will remain U-7; the other lot will remain U-3;
 4. Sohio will apply to the Board of Zoning Appeals for a special use permit, so that the zoning will not be changed; this project is based upon the approval;
 5. the hours of operation for the Pro-Care facility will be from 6:00 a.m. to 10:00 p.m. Monday through Friday; 8:00 a.m. to 6:00 p.m. on Saturday.
University Heights Planning Commission Minutes, 6-05-86.
BP currently operates a gas station on the lot zoned U-7 Local Retail, and a Pro Care Center to service vehicles on the lot zoned U-3 Automobile Parking by virtue of the special use permit issued in 1986, consistent with the above restrictions, renewable annually.
In 1998, BP appeared before the City's planning commission to request approval of its site plan to modify and enlarge its current operations. Brian Duffy, a BP representative, described the proposed improvement. BP's plan called for the replacement of its current 288 sq. ft. kiosk with a 2,480 sq ft. building housing a convenience store and fast food restaurant. BP planned to annex the new building to the existing Pro Care Center. Consequently, BP's new building would straddle the zoning line between local retail and automobile parking. Members of the planning commission received minutes of the 1986 meetings regarding BP's special use permit. The City's Mayor, and others, expressed concern about the proposed expanded use in light of the U-3 zoning and the 1986 grant of a special use permit to operate the Pro Care Center, an otherwise impermissible use in an U-3 automobile parking zone. Other concerns included the potential sale of alcoholic beverages, and the cost of gasoline. Discussion of BP's plan concluded with a request that it provide additional information regarding the project.
At a second meeting of the planning commission held in March 1998, the building commissioner stated BP needed a lot consolidation, special use permit and a variance to accomplish its building as designed. Additionally, attendees raised the issue of alcohol sales, increased traffic, safety, and aesthetics. At the meeting's end, the planning commission voted, unanimously, to deny BP's request to improve its property. The City unanimously affirmed the planning commission's decision.
BP appealed the City's decision to the Cuyahoga County Court of Common Pleas. BP alleged the City acted unconstitutionally, illegally, arbitrarily, capriciously, and unreasonably when it denied BP's application. The case came up for hearing before the bench on April 16, 1999.
On April 15, 1999, BP filed a transcript of testimony from the Planning Commission and City Council meetings. In an oral motion, the City moved to strike BP's transcript. The City argued that BP served the transcript less than twenty-four hours before the hearing; that the transcript contained unsworn testimony, and that if requested, the City would have provided a verbatim transcript from tapes of the meeting. BP argued the City's motion was premature because it may not need to use the transcript during the hearing. The trial court agreed with BP and reserved ruling on the City's motion to strike.
BP presented three witnesses, Carl Bainer, Norman Krumholz, and Brian Duffy. Carl Bainer, an architect hired by BP to design the proposed building, described the physical layout of the site and the design of the building. Bainer testified the proposed building's design fit the Georgian Colonial-style architecture of the area.
Next, Norman Krumholz, an urban planner and professor of urban planning, provided expert witness testimony for BP addressing the reasonableness of the City's reasons for denying BP's application. Krumholz testified that of the purposes of city planning and land use regulation, aesthetics provided the weakest planning rationale because of the wide variation in judgment on what is good or what is not good design. He judged the proposed building design aesthetically more attractive and more accessible to those with disabilities than the existing structure. He testified gas stations do not generate traffic, but rather take in traffic that is already on the road. He also stated the addition of a convenience store/restaurant represented an appropriate use of the U-7 retail district property. Further, he stated the addition posed no change in use, just an expansion as BP already sold food from the existing structure. However, on cross examination, Krumholz admitted gas stations require a special use permit to operate in a U-7 district. Additionally, he admitted BP's special use permit prohibited the sale of food and beverages. Krumholz conceded BP's sale of food items from the facility violated the conditions of the special use permit. He also testified that it was not unreasonable for cities to make land use choices based on aesthetics.
Brian Duffy, a real estate developer employed by BP, provided testimony regarding the process BP went through in seeking approval of the planned expansion. He testified to meeting with city officials prior to submitting the plans for the new building. He testified BP did not initially seek re-zoning of the U-3 lot because city officials told BP it was not necessary. However, he admitted on cross examination that officials later told him to amend his application to include a request for rezoning and lot consolidation. He stated that he wrote a letter requesting rezoning and consolidation which he hand-delivered to the city. He also confirmed that BP's engineer requested rezoning on the plat submitted to the city's engineer. He did not dispute the proposed building location would straddle the U-3 lot. He also testified BP planned to apply for a beer and wine permit. He stated BP's intent to sell alcoholic beverages became the focus of the meetings. He admitted, however, BP did not currently have a permit to sell alcoholic beverages from that location and had not yet applied for such permit.
The City presented two witnesses, Joe Ciuni and David Hartt. Ciuni, University Heights City Engineer, testified he reviewed the site plan submitted by BP. He indicated he found the consolidation plan acceptable from an engineering standpoint and recommended its approval. However, he emphasized his recommendation was based on engineering principals alone and did not consider zoning restrictions. Ciuni noted U-3 automobile district zoning precluded the erection of buildings. He also testified reasons discussed at the Planning Commission and Council meetings for denying BP's application included aesthetics, traffic, safety of pedestrians crossing, and the potential sale of alcoholic beverages. He admitted the City did not have aesthetic zone design guidelines. He also admitted the City did not conduct a traffic study to indicate whether the consolidation posed a safety hazzard.
David Hartt provided expert testimony for the City in the area of city planning. Hartt testified the City's use of the parking district as a transition from retail to the residential districts was a reasonable zoning policy to adopt. He stated the special use permit granted BP limiting operations on both the U-3 and U-7 zoned property represented a compromise. The compromise allowed BP to place a Pro Care Center on a site where it otherwise is not permitted, in return for minimizing the overall level of development on the site. Hartt believed the City acted reasonably in fashioning this compromise. Hartt testified, in light of the city's zoning policy and the conditions of the special use permit granted BP, the City acted reasonably in denying BP's 1998 proposal to increase the level of development on the site.
At the close of the hearing the city renewed its motion to strike BP's privately prepared transcript. The court, finding BP filed the transcript less than twenty-four hours before the hearing and failed to use the transcript during the hearing, granted the City's motion. On April 20, 1999, the trial court affirmed the City's administrative decision to deny BP's site plan. This appeal followed.
Before considering BP's assignments of error, we set forth the standard of review. In reviewing an appeal of an administrative decision brought pursuant to R.C. 2506, the Court of Common Pleas must weigh the evidence in the record and whatever additional evidence may be admitted * * * to determine whether there exists a preponderance of reliable, probative and substantial evidence to support the agency decision. Dudukovich v. Lorain MetropolitainHousing Authority (1979), 58 Ohio St.2d 202, 207, 389 N.E.2d 1113,1117. If a preponderance of reliable, probative and substantial evidence exists, the Court of Common Pleas must affirm the agency decision; if it does not exist, the court may reverse, vacate, modify or remand. Id. This Court essentially applies the same standard. We must review the record and determine, as a matter of law, if there exists a preponderance of reliable, probative, and substantial evidence to support the city's decision to deny BP's request. Id. If such evidence exists, we must affirm the trial court's judgment; if it does not exist, we must reverse the judgment. Id.
In its first assignment of error, BP argues the trial court failed to apply the appropriate standard of review. BP alleges the record fails to support the City's denial of its site plan request by a preponderance of reliable, probative, and substantial evidence because the City based its decision on traffic concerns, aesthetic considerations and the potential sale of alcoholic beverages. BP argues these three factors represent legally insufficient support for the City's decision.
The City argues BP fails to include an important and determinative factor underlying the City's decision — existing zoning of a portion of the BP site as U-3 Automobile Parking prohibits the use proposed. The City argues it may lawfully restrict the use of land within its boundaries by reasonable, non-arbitrary and legislatively created zoning ordinances. We agree.
[T]he right of the individual to use and enjoy his private property is not unbridled but is subject to the legitimate exercise of the local police power. Village of Hudson v. Albrecht (1984),9 Ohio St.3d 69, 72, 458 N.E.2d 852, 855; see Standard Oil v. Cityof Mayfield Heights (April 30, 1992), Cuyahoga County App. No. 60566, unreported. Local police power includes the authority to impose and enforce reasonable zoning regulations. Id.
BP correctly argues the City lacks the ability to prevent the sale of alcoholic beverages through zoning regulation which prohibit the sale of alcoholic beverages in an area zoned for commercial or industrial uses if the property owner receives the proper license from the state. Westlake v. Mascot Petroleum Co.
(1991), 61 Ohio St.3d 161, 573 N.E.2d 1068. BP correctly argues the City may not use traffic concerns to deny a land use appearing otherwise lawful and proper. State ex rel. Killeen Realty Co. v.City of East Cleveland (1959), 169 Ohio St. 375, 160 N.E.2d 1; PureOil Division v. City of Brook Park (1971), 26 Ohio App.2d 153,269 N.E.2d 853. Similarly, aesthetic considerations standing alone may be insufficient to deny a property owner an otherwise lawful and viable use of his property. See Hudson.
First, BP admitted that it has not applied for a permit to sell beer and wine and the City concedes it may not prevent BP from selling alcoholic beverages from its current operation located in the retail zoning district if BP receives a state license to do so. Further, the record as a whole provides a preponderance of evidence, undisputed by BP, that its proposed site plan locates a retail establishment in a U-3 Automobile Parking zone. The following uses are permitted in a U-3 zone:
 (a) Parking areas and accessways for passenger automobiles, providing such areas:
 (1) Are accessory and adjacent to multi-family, business or commercial manufacturing uses: and
 (2) Are not used for selling, dead storage, repairing or servicing of any kind.
 (B) Parking areas shall conform to all applicable regulations.
 (C) Parking areas in existence or being constructed under special use permits granted by the Board of Zoning Appeals prior to July 15, 1956, shall comply with the terms of such special use permits notwithstanding the provisions of section 1113.01, unless revised by the Board.
University Heights Ord. 1113.02. Further, the specific purposes of a U-3 zone are as follows:
 (a) To provide a transitional use or buffer area (generally between business and residential districts) wherein open land developments such as parking areas and driveways would be more appropriate than building developments;
 (b) To provide areas for expansion of off-street parking where presently needed, and to control location of accessways to such parking areas;
 (c) To protect adjacent residential neighborhoods from traffic congestion by setting limits, based on need, for future expansion of such parking facilities, and by establishing protective features along lines so defined;
 (d) To promote the most desirable use of land in accordance with a well-considered plan, and to stabilize and enhance property values.
University Heights Ord. 1113.01. Consequently, to the extent that BP seeks to locate a retail establishment on its property located in the U-3 zone, BP's proposed use is unlawful and improper. We conclude, therefore, the trial court applied the proper standard of review in affirming the City's decision. Accordingly, we overrule BP's first assignment of error.
In its second assignment of error BP argues the trial court failed to admit its privately prepared transcript. BP argues R.C.2506.03 requires the trial court to accept the transcript where the City failed to file a verbatim transcript of City council proceedings. R.C. 2506.03 provides a remedy when an administrative body files a deficient or incomplete transcript. R.C. 2506.03
states
 "(A) The hearing of such appeal shall proceed as in the trial of a civil action, but the court shall be confined to the transcript as filed * * * unless it appears, on the face of that transcript * * * that one of the following applies:
(1) The transcript does not contain a report of all evidence admitted or proffered by the appellant; * * *
(5) The officer or body failed to file with the transcript, conclusions of fact supporting the final order, adjudication, or decision appealed from;
 If any of the circumstances described in divisions (A)(1) to (5) of this section applies, the court shall hear the appeal upon the transcript and such additional evidence as may be introduced by any party. (Emphasis added.)
R.C. 2506.03 requires the court to hold a hearing under the delineated circumstances, and to hear such additional evidence as may be introduced by either party in the proceeding appeal.McCann v. Lakewood (1994) 95 Ohio App.3d 226, 642 N.E.2d 48. In this case, the court held a hearing as required. Further, the court did not prevent BP from presenting the transcript evidence at the hearing, rather BP chose not to introduce the transcript in the proceeding. For those reasons, we conclude the trial court did not err in granting the City's motion to strike a transcript which BP filed less than twenty-four hours before the hearing and never used in the proceeding. Accordingly, we overrule BP's second assignment of error.
In its third, fourth, and fifth assignments of error, BP argues the City denied its application for site approval on the impermissible basis of potential alcoholic beverage sales. Having reviewed the record as a whole and determined that the City properly denied BP's site plan as proposing a retail use impermissible in a U-3 Automobile District, we conclude that it is not necessary to reach BP's assigned errors regarding the alcoholic beverage issue. The trial court found and we agree that the reason for the permit denial was based solely on the concept of impermissible use.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and JAMES D. SWEENEY, J., CONCUR.
 ____________________________ PATRICIA ANN BLACKMON JUDGE