Trafalgar argues in its second assignment of error that the referendum which nullified the zoning amendment that the Board of Commissioners of Miami County had enacted violates the Fourteenth Amendment to the Constitution of the United States in two ways. First, because it deprives Trafalgar of its property without due process of law, which the Fourteenth Amendment by its terms prohibits. Second, because the referendum accomplished a prohibited taking of Trafalgar's property without just compensation, a violation of the Fifth Amendment to the Constitution of the United States made applicable to the states through the Fourteenth.
Board of County Commissioners are authorized by R.C. 303.02 to adopt zoning regulations governing use of lands in unincorporated areas "[f]or the purpose of promoting the public health, safety, and morals." R.C.303.12(A) authorizes the board to amend such regulations, but contains no express standards for adoption of amendments. However, the promotion ofpublic health, safety and morals standard of R.C. 303.02 applicable to enactments of regulations applies as well to amendments of those regulations enacted by the board pursuant to R.C. 303.12(A).
R.C. 303.12(H) provides that zoning amendments adopted by a board of commissioners become effective in thirty days after enactment unless petitions containing a required number of signatures of qualified voters residing in the township or other affected area are filed within that time requesting a referendum election for approval or rejection of the ordinance. The section further provides: "No amendment for which such referendum vote has been requested shall be put into effect unless a majority of the vote cast on the issue is in favor of the amendment." The section contains no discernible standards to guide voters in casting their ballots on the issue presented.
Zoning classifications which restrict use of land are exercises of the state's police power. Hudson v. Albrecht (1984), 9 Ohio St.3d 69. A property owner may successfully attack a zoning classification on due process grounds if the restriction imposed is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Euclid v. Ambler Realty Co. (1926), 272 U.S. 365, 395, 47 S.Ct. 114, 71 L.Ed. 303.
Delegations of legislative power to a regulatory agency must be accompanied by discernible standards, so that the agency's acts can be measured for its fidelity to the legislative will. Yakus v. UnitedStates (1944), 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed 834. Trafalgar argues that the lack of discernible standards in R.C. 303.12(H) to guide voters amounts to an unlawful delegation of legislative power, resulting in a nullification of the amendment the board of commissioners had adopted that is arbitrary and unreasonable.
It is true that R.C. 303.12(H) contains no discernible standards to guide voters comparable to the "promotion of the public health, safety, and morals" standards in R.C. 303.02 and R.C. 303.12(A) which guides the board of commissioners. However, that is a difficulty only if R.C.303.12(H) amounts to a delegation of legislative power. If it is not, then the lack of discernible standards does not render the result arbitrary or unreasonable.
In Forest City Enterprises v. Eastlake (1975), 41 Ohio St.2d 187, a city charter required voter approval of any rezoning ordinance enacted by a city commission. As here, the referendum process was attacked as producing an unreasonable and arbitrary outcome because no discernible standards were given to guide voters. The Ohio Supreme Court held that the charter provision was an unlawful delegation of legislative power for that reason, holding that "[a] reasonable use of property, made possible by appropriate legislative action, may not be made dependent upon the potentially arbitrary and unreasonable whims of the voting public." Id., at p. 195. The court made the following further distinction, however:
 "If the existence of the law depends upon the vote or act of the people it is an unconstitutional delegation of legislative power, but if the law is complete in and of itself the fact that it provides for the removal or modification of its prohibition by the act of those most affected thereby, does not make it a delegation of legislative power."
Id., quoting Myers v. Fortunato (1920), 12 Del. Ch. 374, 375.
Here, an amendment of a zoning regulation enacted by a board of commissioners becomes effective in thirty days pursuant to R.C 303.12(H). It does not require voter approval for that purpose. Because the enactment is complete in itself, the fact that R.C. 303.12(H) provides for its subsequent nullification by the voters most affected thereby does not make it a delegation of legislative power. Not being a delegation of legislative power, the referendum is not subject to attack because its outcome is arbitrary and unreasonable.
The United States Supreme Court held on review of the Eastlake case that "[a] basic instrument of democratic government, the referendum process does not, in itself, violate the Due Process Clause of the Fourteenth Amendment when applied to a rezoning ordinance." Eastlake v.Forest City Enterprises, Inc. (1976), 426 U.S. 668, 96 S.Ct. 2358,49 L.Ed.2d 132, 135. However, the High Court reversed the Ohio Supreme Court on a holding that, because municipal referendums are allowed by ArticleII, Section 1 of the Ohio Constitution, there was actually no delegation of legislative power at all.
The referendum provisions of R.C. 303.12(H) are only a subsequent electoral nullification of a legislative enactment by the people most affected thereby, not a delegation of legislative power. Therefore, the referendum for which R.C. 303.12(H) provides is not subject to the requirements of the due process clause of the Fourteenth Amendment. Because the referendum is not subject to those requirements, its outcome is not subject to attack because it is unreasonable and arbitrary, subject to the whim of voters who are unguided by discernible standards.
Trafalgar also argues, inter alia, that the referendum which preserved the agricultural use classification of its land, preventing its use for residential development, constitutes a taking of its property for a public purpose without just compensation. Such takings are prohibited by the Fifth Amendment to the Constitution of the United States, which is made applicable to the states through the Fourteenth Amendment. ChicagoB. O. R. Co. v. Chicago (1897), 166 U.S. 226, 17 S.Ct. 581,41 L.Ed. 979. The policy behind the takings clause is "to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v.United States (1960), 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554.
Not every land use regulation results in a prohibited taking. Dolan v.City of Tigard (1994), 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304. "A land use regulation does not effect a taking if it `substantially advances legitimate state interests' and does not `deny an owner economically viable use of his land.'" Id., 512 U.S., at 385, quotingAgins v. Tiburon (1980), 447 U.S. 255, 260, 100 S.Ct. 2138,65 L.Ed.2d 106.
Here, the state, or the voters of Concord Township, has a legitimate interest in preserving agricultural land free from suburban sprawl. Prohibiting development of Trafalgar's acreage for residential development serves that purpose. Trafalgar alone is not required to bear that cost. It impacts on all other landowners in the township who are likewise subject to the existing restriction. Trafalgar cannot complain that its property was "taken" for a public use because it was denied an exemption from an existing regulation. Therefore, no Fifth Amendment violation is demonstrated.