163 N.J. Super. 58 (1978)
394 A.2d 157
MORRISTOWN ROAD ASSOCIATES, PLAINTIFF,
v.
MAYOR AND COMMON COUNCIL AND THE PLANNING BOARD OF THE BOROUGH OF BERNARDSVILLE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 31, 1978.
*59 Mr. Melvin H. Bergstein, attorney for plaintiff (Messrs. Margolis & Bergstein, attorneys).
Mr. J. Albert Mastro, attorney for the defendants Mayor and Common Council of Bernardsville (Messrs. Mastro & Mastro, attorneys).
Mr. David H. Rothberg, attorney for defendant Planning Board of Bernardsville (Messrs. Sachar, Bernstein, Rothberg, Sikora & Mongello, attorneys).
GAYNOR, J.C.C. (temporarily assigned).
By this motion plaintiff seeks a summary determination on the second count of its complaint wherein it demands judgment declaring invalid an amendment to the zoning ordinance of the Borough of Bernardsville establishing a design review committee and providing for the review of site plans by that committee. Plaintiff's attack upon this amendment is founded upon the objection that the standards set forth in the ordinance for use by the planning board and design review committee are so broad and vague as to be incapable of being objectively applied, thereby permitting arbitrary action by these agencies in the review of site plan applications. We agree that the ordinance is defective in this respect.
The adequacy of standards governing the application of aesthetic requirements to proposed land use and development, although the subject of judicial consideration in other jurisdictions, has not previously been considered in New Jersey.
The ordinance in question was adopted by the borough on January 23, 1978 for the stated purposes of enhancing the desirability of the borough as a place of residence and employment, preserving property values and promoting the general welfare. These objectives were sought to be attained *60 by "fostering good quality of design and attractive appearance of property, preserving and enhancing natural features and the natural environment, contributing to the amenities and attractiveness of an area * * *, creating sufficient utility and circulation networks which insure the safe and convenient movement of traffic, and encouraging the most appropriate use and development of the property and adjacent properties." A citizens advisory committee, designated as the design review committee, was established by the ordinance, for the purpose of assisting the planning board, but without power to take official action required of the planning board, in the review of site plans involving new buildings with respect to the design standards set forth in the ordinance. All such site plans were required to be submitted to the design review committee for its recommendation and report to the planning board. The standards to be utilized by the design review committee and the planning board in reviewing site plans are set forth in the ordinance as follows:
(d) Design Standards. The following standards shall be utilized by the Planning Board and by the Design Review Committee in reviewing all site and building plans. These standards are intended to provide a frame of reference for the applicant in the development of site and building plans as well as a method of review for reviewing authority. These standards shall not be regarded as inflexible requirements nor are they intended to discourage creativity, invention and innovation, nor shall they be used to dictate to an applicant the adherence to a particular architectural style.
(1) Preservation of Landscape. The landscape shall be preserved in its natural state, insofar as practicable and where desirable by minimizing tree and soil removal, and any grade changes shall be in keeping with the general appearance of neighboring developed areas. Landscape treatment that is appropriate to the area and the terrain and which will enhance the overall appearance of the site shall be employed.
(2) Relation of Proposed Buildings to Environment. Proposed structures shall be related harmoniously to the terrain and to existing buildings in the vicinity that have a visual relationship to the proposed buildings. Such relationship shall be achieved by: (2.1) Architectural design which is harmonious with the character of existing development.

*61 (2.2) The use of exterior colors, facade or roof materials or the combination of colors and materials that are harmonious.
(2.3) The relationship of design features such as height and mass, building proportions, roof lines, building projections and ornamental features that will create a coordinated and harmonious appearance.
(3) Design of Building Walls. All walls are to be constructed of durable materials such as brick, stone, glass, pre-cast concrete and wood when properly treated. Where durability and performance are questionable, the applicant may be asked to provide a manufacturer's guarantee or proof of durability from an independent testing laboratory certification. The use of exposed concrete block is prohibited, unless the same is textured.
(4) Similarity and Dissimilarity of Design. Excessive similarity of appearance and the repetitiveness of features resulting in displeasing monotony of design shall not be permitted. Proposed building construction whose architectural design is inconsistent with established architectural character in any neighorhood, shall be avoided.
(5) Open Space, Circulation and Parking. Open spaces, access driveways and the location and design of parking areas shall be in scale with the project as a whole. Special attention shall be given to location and number of access points to the public streets, width of interior drives and access points, general interior circulation, separation of pedestrian and vehicular traffic, and arrangement of parking areas that are safe and convenient and, insofar as practicable, do not distract from the design of proposed buildings and structures and the neighboring properties.
(6) Special Features. Exposed storage areas, exposed machinery installations including roof installations, service areas, truck loading areas, utility buildings and structures, and similar accessory areas and structures shall be so located and screened with plantings or by other methods to prevent their being incongruous with the existing or contemplated environment and the surrounding properties.
(7) Advertising Features and Fences. The size, location, design, color, lighting, texture and materials of signs, outdoor advertising structures or features as well as fences or other man-made visual barriers shall not detract from the design and appearance of existing or proposed structures and the surrounding area, nor create confusion with traffic or any other signs.
(8) Surface Water Drainage. Special attention shall be given to proper site surface drainage so that removal of surface waters will not adversely affect neighboring properties or that public storm drainage system. Storm water shall be removed from all roofs, canopies, and paved areas and carried away in paved swales or in an underground drainage system. Surface water in all paved areas *62 shall be collected at intervals so that it will not obstruct that flow of vehicular or pedestrial traffic, and will not create puddles or the menace of ice in the paved areas.
(9) Utility Service. Electric and telephone lines shall be underground. Any utility installations remaining above ground shall be located so as to have a harmonious relation to neighboring properties and the site. The proposed method of sanitary sewerage disposal from all buildings shall be indicated.
The plaintiff contends that the foregoing standards are so vague and indefinite that an applicant cannot anticipate a building design which will be conforming. In particular, plaintiff argues that the requirement that a structure shall be related harmoniously to the terrain and existing buildings in the vicinity that have a visual relationship to the proposed structure, and that such relationship is to be achieved by utilizing an architectural design which is harmonious with the character of existing development, by using such materials and colors in the construction of the building as are harmonious and by adopting such design features as will create harmonious appearance, calls for the exercise of such subjectivity as to invite arbitrary determination and unbridled discretion on the part of the reviewing agency. Plaintiff further asserts that these standards offer no reasonable or workable guidelines to the applicant for site plan approval nor to the officials who must pass upon the application.
Defendant borough contends that the subject amendment must be viewed as an integrated part of the zoning ordinance and that portions of the amendatory ordinance should not be lifted out of context in determining the adequacy of the standards to be employed in reviewing a proposed site plan. It is the borough's position that the various regulations as contained in the zoning ordinance and the amendments thereto, including the subject ordinance, provide for acceptable and workable standards in their application as an entirety to a site plan review. Additionally, defendant argues that the standards set forth in the ordinance establishing a design review committee must be considered in their relationship to the purpose of the ordinance, and, if so viewed, the *63 requirements for harmony or pleasing design then assume adequate objectivity. The borough acknowledges that some of the standards prescribed by the ordinance do not lend themselves to precise application under all circumstances; however, it contends that these standards are as precise as the subject matter of the regulation permits and thus the ordinance is not violative of the rule of reasonableness.
A zoning ordinance must be clear and explicit in its terms, setting forth adequate standards to prevent arbitrary and indiscriminate interpretation and application by local officials. J.D. Constr. Co. v. Freehold Tp. Bd. of Adj., 119 N.J. Super. 140, 149 (Law Div. 1972); Schack v. Trimble, 48 N.J. Super. 45, 53 (App. Div. 1957), aff'd 28 N.J. 40 (1958); Jantausch v. Verona, 41 N.J. Super. 89, 104 (Law Div. 1956), aff'd 24 N.J. 326 (1957). See also, 8 McQuillin, Municipal Corporations (3 ed. 1976), § 25.59:
As other ordinances, zoning ordinances are required to be reasonably definite and certain in terms so that they may be capable of being understood. The boundaries or limits of zones or district must be clearly and definitely fixed, and the restriction on property rights in the several zones must be declared as a rule of law in the ordinance and not left to the uncertainty of proof by extrinsic evidence. The rule of certainty and definiteness of zoning ordinances verges on or is identical with the rule that they must establish a clear rule or standard to operate uniformly and govern their administration, in order that arbitrariness and discrimination in administrative interpretation and application be avoided.
Restrictions contained in a zoning ordinance must be clear and capable of being understood and complied with by the property owner who seeks to meet its provisions. The right of a landowner to utilize his property should not depend upon the "outcome of litigation after the event in which a provision, which he apparently fully meets, assumes a new and different significance by a process of refined interpretation." Jantausch v. Verona, supra.
The need for explicit standards is especially great when violators thereof may be subject to criminal or quasi-criminal *64 penalties. See Maplewood v. Tannenhaus, 64 N.J. Super. 80 (App. Div. 1960) certif. den. 34 N.J. 325 (1961); Kearny v. Modern Transp. Co., 116 N.J. Super. 526 (App. Div. 1971).
Because of the subjective elements which can be involved in matters of architectural design, the necessity for clear and definite standards is particularly applicable to ordinances which seek to control this aspect of construction. The formulation of such standards has been described as the "most troublesome problem encountered in municipal attempts to control architectural design." 2 Anderson, American Law of Zoning (2 ed. 1976), § 9.75. As design controls are enforced by administrative agencies, the prerequisite of definiteness will only be met when the standards sufficiently confine the process of administrative decision and provide a court with an understandable criterion for review. Ibid.
The validity and applicability of architectural review ordinances have been considered by our courts, but the sufficiency of the standards governing the action of the reviewing board was not raised or considered in those cases. See Piscitelli v. Scotch Plains Tp. Com., 103 N.J. Super. 589 (Law Div. 1968); Hankins v. Rockleigh, 55 N.J. Super. 132 (App. Div. 1959). This issue, however, has been considered in other jurisdictions. West Palm Beach v. State, 158 Fla. 863, 30 So.2d 491 (Sup. Ct. 1947); Pacesetter Homes, Inc. v. Village of Olympia Fields, 104 Ill. App.2d 218, 244 N.E.2d 369 (App. Ct. 1968); State ex rel. Saveland Park Holding Corp. v. Wieland, 269 Wis. 262, 69 N.W.2d 217 (Sup. Ct. 1955); Reid v. Architectural Board of Review, 119 Ohio App. 67, 192 N.E.2d 74 (Ct. App. 1963); State ex rel. Stoyanoff v. Berkeley, 458 S.W.2d 305 (Mo. Sup. Ct. 1970); 41 A.L.R. 3d 1397.
In West Palm Beach v. State, supra, the test of definiteness was deemed not to have been met by an ordinance which required that "the character and appearance of existing buildings or structures in said subdivision shall be considered, but in every new instance the completed appearance *65 of every new building or structure must substantially equal that of the adjacent buildings or structures in said subdivision in appearance, square foot area and height." In holding this portion of the ordinance void, the Court observed:
Zoning is an exercise of police power and ordinarily the exercise of such power in zoning has relation to structural qualities and the use of structures when considered in reference to the protection of health, welfare, safety and morals of the public. When regulations are to be imposed in order to promote health, welfare, safety and morals it is necessary that exactions be fixed in the ordinance with such certainty that they not be left to the whim or caprice of the administrative agency and the ordinance must have some relation to a lawful purpose  to promote health, welfare, safety and morals.
A similar result was reached in Pacesetter Homes, Inc. v. Village of Olympia Fields, supra. There an architectural advisory committee had been established by ordinance to review plans for new construction for the purpose of determining whether the proposed construction might result in (1) excessive similarity or dissimilarity of design in relation to properties within a distance of 1,000 feet of the proposed site, or in relation to the characteristics of building design generally prevailing in the area, in respect to facade, size, roof line, height, construction material, location and elevation of the building site, topography, and quality of architectural design; or (2) inappropriateness of design, landscaping, building materials or site orientation in relation to nearby properties. In affirming a ruling that this section of the ordinance was invalid, the court concluded that the prescribed standards were inadequate to control the actions of the committee in determining whether an application for a building permit should be approved or disapproved. Additionally, the court considered that the ordinance conferred too broad a discretion on the committee in acting upon an application, indicating that it permitted subjective opinions to control the determinations of the committee.
*66 Cases in which look-alike standards have been considered adequate to support design review ordinances have based the sufficiency upon the overall controlling requirement that the proposed construction not cause a depreciation of property values. Thus, in State ex rel. Saveland Park Holding Corp. v. Wieland, supra, the standard which received approval was "that the exterior architectural appeal and the proposed plan of the structure when erected should not be so at variance with those of structures already constructed, or in the course of construction, in the immediate neighborhood * * * as to cause a substantial depreciation of the property values of said neighborhood." Similarly, in State ex rel. Stoyanoff v. Berkeley, supra, it was stated that the disapproval of the review board was to be based upon a finding that the proposed structure would constitute an unsightly, grotesque or unsuitable structure in appearance, detrimental to the welfare of surrounding property or residents. The same approach was followed in Reid v. Architectural Board of Review, supra:
Section 137.05, as outlined above, sets out criteria and standards for the Board to follow in passing upon an application for the building of a new home which are definite as to the objective to be attained  to protect property, to maintain high character of community development, to protect real estate from impairment and destruction of value; specific as to matters to be considered and regulated  design, use of material, finished grade lines, orientation; instructive as to the method by which the matters specified are to be adjudged  "proper architectural principles" and informative as to the bounds within which it is to exercise these powers  "for the accomplishment of said purposes only." [Emphasis supplied]
The Bernardsville ordinance contains several standards dealing expressly with architectural design. The ordinance provides that "proposed structures shall be related harmoniously to the terrain and to existing buildings in the vicinity that have a visual relationship to the proposed buildings." This aim is to be achieved by "architectural design which is harmonious with the character of existing development, *67 the use of exterior colors, facade or roof materials or the combination of colors and materials that are harmonious, and relationship of design features * * * that will create a coordinated and harmonious appearance." The prohibited similarity or dissimilarity of design is to be determined by the "displeasing monotony of design" and "inconsistency with established architectural character in any neighborhood." No definition of the terms "harmonious" "displeasing" or "appropriate" are given in the ordinance. It may be that, regarding architectural design, there are "concepts of congruity held so widely that they are inseparable from the enjoyment and hence the value of property." United Advertising Corp. v. Metuchen, 42 N.J. 1, 5 (1964). However, the standards set forth in the present ordinance are not limited to such concepts. The basic criterion for design review under the ordinance is harmony with existing structures and terrain. This standard does not adequately circumscribe the process of administrative decision nor does it provide an understandable criterion for judicial review. It vests the design review committee, as well as the planning board, with too broad a discretion, and permits determinations based upon whim, caprice or subjective considerations. Harmony of design and appearance is conceptual. A proposal which is considered harmonious and appropriate by one person may be deemed displeasing by another. A standard which permits such evaluations does not meet the test of certainty and definiteness required of zoning regulations.
The ordinance also offers no workable guidelines to one seeking approval of plans, rendering it almost impossible for an applicant to conform his plans to its requirements and making the utilization of his property dependent upon the subjective reactions of members of an administrative agency as to the harmoniousness of a proposed structure to the existing development. This deficiency likewise precludes the measurement of the reasonableness of a design approval or disapproval, thereby preventing a reviewing court from effectively determining when a decision has been arbitrary or *68 capricious. The portions of the subject ordinance which dictates standards for architectural design must therefore be invalidated as impermissibly vague and indefinite.
In view of this conclusion plaintiff's application is not subject to review and approval by the design review committee and shall be acted upon the planning board without regard to the provisions of Ordinance 556 of the Borough of Bernardsville. This determination makes it unnecessary to consider the other issues raised by the plaintiff.