MORRIS COUNTY FAIR HOUSING COUNCIL, MORRIS COUNTY BRANCH OF THE NATIONAL ASSOCIATION FOR ADVANCEMENT OF COLORED PEOPLE AND ALFRED A. SLOCUM, PUBLIC ADVOCATE OF THE STATE OF NEW JERSEY, PLAINTIFFS, AND JOHN AND SALVATORE CORTESE, HOLLOW HILL ASSOCIATES AND SENTRY-MORRIS ASSOCIATES, PLAINTIFFS-INTERVENORS, v. BOONTON TOWNSHIP, CHATHAM TOWNSHIP, CHESTER TOWNSHIP, DENVILLE TOWNSHIP, EAST HANOVER TOWNSHIP, FLORHAM PARK BOROUGH, HANOVER TOWNSHIP, HARDING TOWNSHIP, JEFFERSON TOWNSHIP, KINNELON BOROUGH, LINCOLN PARK BOROUGH, MADISON BOROUGH, MENDHAM BOROUGH, MENDHAM TOWNSHIP, MONTVILLE TOWNSHIP, MORRIS TOWNSHIP, MORRIS PLAINS BOROUGH, MOUNTAIN LAKES BOROUGH, MOUNT OLIVE TOWNSHIP, PARSIPPANY–TROY HILLS TOWNSHIP, PASSAIC TOWNSHIP, PEQUANNOCK TOWNSHIP, RANDOLPH TOWNSHIP, RIVERDALE BOROUGH, ROCKAWAY TOWNSHIP, ROXBURY TOWNSHIP AND WASHINGTON TOWNSHIP, DEFENDANTS, AND SOUTHWEST MORRIS TOWNSHIP HOMEOWNERS ASSOCIATION, DEFENDANT–INTERVENOR.

MURWIN DEVELOPMENT CORP., A NEW JERSEY CORPORATION, PLAINTIFF, v. THE TOWNSHIP OF MORRIS, IN THE COUNTY OF MORRIS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, THE TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MORRIS AND THE PLANNING BOARD OF THE TOWNSHIP OF MORRIS, DEFENDANTS.

HOLLOW HILL ASSOCIATES, A GENERAL PARTNERSHIP UNDER THE LAWS OF NEW JERSEY, PLAINTIFF, v. TOWNSHIP OF MORRIS, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, AND THE MORRIS TOWNSHIP PLANNING BOARD, DEFENDANTS.

Superior Court of New Jersey
Law Division
Morris County/Mercer County

Decided May 1, 1987.

*Stephen Eisdorfer* for plaintiffs Morris County Fair Housing Council, *et al.* (*Alfred A. Slocum,* Public Advocate, attorney).

*Guliet D. Hirsch* for plaintiff Murwin Development Corp. (*Brener Wallack & Hill,* attorneys).

*Alfred L. Ferguson* for plaintiff Hollow Hill Associates (*McCarter & English,* attorneys).

*Thomas F. Collins, Jr.* for plaintiffs-intervenors John and Salvatore Cortese (*Vogel, Chait, Schwartz & Collins,* attorneys).

*Peter R. Bray* for plaintiff-intervenor Sentry–Morris Associates (*Cole, Geaney, Yamner & Byrne,* attorneys).

*James R. Hillas, Jr.* for defendant Morris Township Planning Board.

*Charles T. Hock* for defendants Township of Morris and Township Committee of Township of Morris (*Mills, Hock, Dangler & Mills,* attorneys).

*Lisa K. Pantel* for defendant-intervenor Southwest Morris Township Homeowners Association (*Schenck, Price, Smith & King,* attorneys).

SKILLMAN, J.S.C.

This is a *Mount Laurel* case. *See Southern Burlington Cty. N.A.A.C.P. v. Mount Laurel Tp.,* 67 *N.J.* 151 (1975), *cert. den.* 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.*2d 28 (1975) (*Mount Laurel I*); *Southern Burlington Cty. N.A.A.C.P. v. Mount*

*Laurel Tp.*, 92 *N.J.* 158 (1983) (*Mount Laurel II*). The background of this case has been described in *Borough of Morris Plains v. Dep't of Public Advocate*, 169 *N.J.Super.* 403 (App. Div.1979), certif. den. 81 *N.J.* 411 (1979); *Morris Cty. Fair Hous. Council v. Boonton Tp.*, 197 *N.J.Super.* 359, 363 (Law Div.1984), aff'd 209 *N.J.Super.* 108 (App.Div.1986) and *Morris Cty. Fair Housing Council v. Boonton Tp.*, 209 *N.J.Super.* 393, 441–443 (Law Div.1985), aff'd in part, rev'd in part *sub nom. Hills Development Co. v. Bernards Tp.*, 103 *N.J.* 1 (1986). The claims of the Morris County Fair Housing Council, the Morris County Branch of the NAACP and the Public Advocate against Morris Township were the subject of a settlement agreement dated March 29, 1984. A separate settlement agreement dated April 13, 1984 was entered into between Morris Township and Charles Development Corporation, which provided, among other things, for the rezoning of Charles Development's land for *Mount Laurel* housing. These settlement agreements were approved by this court, subject to certain conditions, by oral opinion dated July 6, 1984, which was embodied in an order dated July 31, 1984. Upon satisfaction of the conditions imposed for approval of the settlements, a final judgment was entered on August 20, 1984 which incorporated the settlement agreement. This judgment was affirmed by the Appellate Division on March 31, 1986 in an opinion reported at 209 *N.J.Super.* 108 (App.Div.1986).

Hollow Hill, the owner of one of the properties rezoned for *Mount Laurel* housing under the settlement agreement, filed a separate action on April 11, 1986, alleging among other things that Morris Township had violated its settlement agreement with the Public Advocate. Both Hollow Hill and Sentry Morris, the owner of another of the properties rezoned for *Mount Laurel* housing, also were permitted by order dated August 13, 1986 to intervene as plaintiffs in the Morris County Fair Housing Council suit. Murwin Development Corporation, the successor in interest to Charles Development Corporation, was substituted as plaintiff in that action, and all three actions against

Morris Township were later consolidated by order entered on October 8, 1986.

Murwin, Hollow Hill and Sentry Morris all filed motions for relief in aid of litigants' rights, returnable before this court on August 1, 1986, which alleged that Morris Township had violated the settlement agreement by the failure of the planning board to expeditiously process applications for approval of their site plans for *Mount Laurel* housing developments. In an oral opinion issued on August 1, 1986, this court concluded that Morris Township had violated the settlement agreement. Specifically, it was found that the planning board was not devoting sufficient time to hearing applications for approval of site plans for *Mount Laurel* developments. Accordingly, the board was ordered to hold at least three hearings a month, each at least three hours long, devoted exclusively to consideration of *Mount Laurel* applications. This decision was embodied in an order entered August 13, 1986.

Nine months have passed since the court granted relief in aid of litigants' rights designed to enforce the obligation undertaken by Morris Township to expeditiously process applications for the approval of site plans for *Mount Laurel* developments. Only one of the applications for approval of a site plan for a *Mount Laurel* development which was pending last August has been decided during that time. That application, filed by Hollow Hill, was denied on January 27, 1987. The board has not yet completed its hearings on the other two applications.

Motions for additional relief in aid of litigants' rights, returnable April 24, 1987, were filed by Murwin, Hollow Hill and Sentry Morris. These motions were joined by John and Salvatore Cortese, the proposed developers of another of the properties in Morris Township rezoned for *Mount Laurel* housing, who were permitted to intervene as plaintiffs by order dated March 17, 1987. The Public Advocate, on behalf of himself, the Morris County Fair Housing Council and the Morris County

Branch of the NAACP, also has filed a motion for relief in aid of litigants' rights.

All moving parties allege that Morris Township has violated the settlement agreement entered into with the Public Advocate and this court's final judgment of August 20, 1984. All moving parties contend that relief in aid of litigants' rights in addition to that granted by this court's order of August 13, 1986 should be ordered. However, the nature and scope of relief sought by the moving parties is somewhat different.

The Public Advocate seeks an order containing the following terms:

1. The Planning Board should be required to decide all development applications for residential developments in the affordable housing zones (RH–5 and RH–16) on their merits within 95 days of the filing of complete applications. The determination should include decisions on any requests for waivers or variances. Failure to decide an application on the merits within this period of time should be deemed approval. No extensions should be permitted except on leave granted by the Court on the grounds that the delay was outside the control of the planning board.

2. The Planning Board should be required to adopt reasonable procedural rules to ensure determinations with the 95–day time limit, including but not limited to:

   a. Requiring that all opinions offered by the Planning Board's experts or by experts for any of the parties be filed in writing within 30 days of the filing of a complete application. If the application is amended during the course of proceedings, any supplemental expert reports should be required to be filed within 30 days of the filing of the amendment.

   b. Requiring that written statements be submitted in lieu of oral testimony by any witness.

   c. Requiring that cross-examination be restricted to relevant, non-repetitive questions and that a party be permitted to cross-examine a witness only if he or she first makes a showing that cross-examination is likely to lead to relevant and probative evidence.

3. The Planning Board should be required to adopt a final written resolution on the merits of the application within 21 days after completion of public hearings.

4. The Court should establish a procedure for judicial review of denials of development applications and approvals subject to unreasonable conditions. The procedure should provide that review may be by motion under *R.* 1:10–5. It should provide for appointment of a special master, who will review the application, the record before the Planning Board, and the decision of the Planning Board and will recommend to the Court a) whether the decision of the

Planning Board is consistent with the judgment and justified on adequate planning grounds and b) if the denial was not justified, on what conditions approval should be granted. The procedure should provide that, following the filing of the special master's report, the Court will hold a hearing and will determine whether the application was properly denied and, if not, upon what conditions it should be granted.

Murwin Development Corporation seeks an order providing:

1. With respect to any development application proposed to include lower income housing, the Morris Township Planning Board shall require the Township engineer and other Township consultants to submit written comments to the Board and the applicant within 30 days of the receipt of new or revised plans;

2. With regard to any development application which is proposed to include lower income housing, the Morris Township Planning Board shall allow representatives of the applicant to confer with Township consultants outside the context of public hearings;

3. With regard to any development application which is proposed to include lower income housing, the Morris Township Planning Board shall not allow any interested party to ask additional questions of an applicant's witness after that interested party had previously concluded cross-examination; and

4. With regard to any development application which is proposed to include lower income housing, the Morris Township Planning Board shall render a decision on any ordinance interpretation question or requested waiver within 30 days of the request of the applicant.

Thus, both the Public Advocate and Murwin seek orders regulating the conduct of future proceedings before the planning board. Cortese also seeks this form of relief.

On the other hand, Hollow Hill, whose site plan application has been denied, seeks an order reversing that determination and appointing a master to make recommendations to the court as to what "conditions on or changes to the site plan of Hollow Hill Associates are necessary, appropriate and justified by minimum standards of health and safety, eliminating the application of all undue cost generating elements of the Morris Township Land Development Regulations, as required by *NAACP v. Mt. Laurel*, 92 *N.J.* 158 (1983)." Sentry Morris Associates, whose site plan application has not yet been acted upon, seeks an order

that the Planning Board shall be and hereby is directed to adopt a Resolution, by or before May 29, 1987, approving the Sentry Morris Site Plan application; and ... that Sentry Morris Associates' Site Plan application shall be automati-

cally approved in the event same is not approved, by formal resolution prior to May 29, 1987.

Thus, the motions on behalf of Hollow Hill and Sentry Morris both seek approval of their site plan applications.

This court concludes for the reasons set forth in part I of this opinion that the Morris Township Planning Board has continued to violate the settlement agreement and the August 20, 1984 judgment and that further supplemental relief with respect to the conduct of proceedings before the board must be ordered.[1] This court also concludes for the reasons set forth in part II of this opinion that the board improperly denied Hollow Hill's application for site plan approval and that that decision must be reversed. All other relief sought by the moving parties including in particular provisions for the automatic approval of the developer-plaintiffs' site plans is denied.

## I.

The settlement agreement between the Public Advocate and Morris Township provides in paragraph 7(b) that

the municipality shall take all reasonable steps to foster development of the [*Mount Laurel* housing called for by the agreement], including but not limited to: ... (b) expedited disposition of site plan applications and municipal approvals by a developer in the affordable housing zone.

The agreement does not set forth any specific time period with which the expedited disposition of site plan applications is to be completed. However, the Municipal Land Use Law, which also governs the board's review of site plan applications under the agreement, does contain specific time limitations. *N.J.S.A.* 40:55D–48(c) requires a planning board to act upon an application for site plan approval within 95 days of submission of a complete application, unless the application includes a request for a variance or other relief from the zoning ordinance authorized by *N.J.S.A.* 40:55D–60, in which event a planning board

---

[1] The court's decision with respect to the future conduct of proceedings before the planning board was announced on the record on April 24, 1987. Part I of this opinion is an amplification of that oral opinion.

has 120 days within which to act, *N.J.S.A.* 40:55D–61. The requirement of "expedited disposition" must be construed to require site plan applications covered by the settlement agreement to be processed at least as quickly as would be mandated by the Municipal Land Use Law; that is, such applications should be decided within not more than either 95 or 120 days, depending on whether a variance or other relief from the provisions of the zoning ordinance is requested. An additional requirement in respect to the consideration of site plan applications under the settlement agreement, contained in section IIA(2) of ordinance 42–83, is that the board shall hold a public hearing on site plan applications "not less than thirty (30) days nor more than forty-five (45) days from the date of submission of a complete application."

■■ It is clear that the board has violated section IIA(2) of ordinance 42–83 by not commencing hearings on *Mount Laurel* development applications within 45 days and that it has also violated section 7(b)(2) of the settlement agreement by not acting upon such applications within 95 or 120 days, or even any time period close to these statutory limits. Murwin filed a revised application on April 28, 1986. However, the hearings on its application were not commenced until September 8, 1986 and have not yet been concluded. Sentry Morris received general development approval for its project on November 18, 1985 and filed an application for site plan approval in December 1985. However, the hearings on its application did not begin until April 1986 and are still in progress. Hollow Hills received a general development approval on August 5, 1985 and filed an application for site plan approval on September 12, 1985. Its application was initially denied because Hollow Hill refused to consent to an extension of the statutory time period for planning board action. After the application was reopened pursuant to consent order, the hearing commenced on May 19, 1986 and the last significant amendment was filed on July 7, 1986, but a decision on the application was not made until more than six months later on January 27, 1987. The Cortese application was

filed on July 15, 1986 and deemed complete in October 1986. However, the first—and thus far only—hearing on the application was not held until April 6, 1987.

It is thus manifest that, notwithstanding this court's prior determination that the Morris Township Planning Board had violated the settlement agreement with the Public Advocate and the court's award of relief in aid of litigants' rights designed to assure the expeditious processing of site plan applications, there has been a continuing violation of the settlement agreement and the judgment embodying that agreement. Consequently, more extensive relief in aid of litigants' rights is required. This court's power to grant such relief is clear. In *Mount Laurel II* the Court held that the trial courts have the broadest possible remedial power to enforce municipalities' *Mount Laurel* obligations. 92 *N.J.* at 285–290. Indeed, the courts have broad power to order municipal land use agencies to discharge their statutory responsibilities in a timely and proper manner even outside the framework of *Mount Laurel* litigation. *See Manalapan Holding Co., Inc. v. Hamilton Tp. Planning Bd.*, 92 *N.J.* 466, 481–482 (1983).

One contributing cause of the board's failure to expeditiously process *Mount Laurel* site plan applications has been the manner in which it has conducted its proceedings. The board has placed virtually no limitations on the cross-examination of experts by members of the public. Consequently, such questioning often has been repetitive and unnecessarily lengthy. The board also has prohibited, or at least severely restricted, informal communications between its technical consultants and the technical consultants for the developers. The inevitable result has been that technical questions concerning the site plans, many rather minor in nature, which might easily have been resolved by informal discussions between the experts, have instead unnecessarily consumed time at the hearings before the board. Another inevitable result of the restrictions placed on informal communications between the experts has been delays in applicants being advised of possible problems

with their plans and hence delays in applicants submitting revised plans. An additional deficiency in the board's handling of site plan applications for *Mount Laurel* developments has been long delays in the submission of reports by the board's technical experts. These delays have in turn caused delays in the submission of revised plans by the applicants and required the applicant's experts to be recalled to the witness stand in order to address problems identified during the middle of the hearings by the board's experts.

■ Some of the board's procedures which have caused unnecessary delay must be corrected by the board itself. Thus, while cross-examination needs to be more effectively controlled, it would not be appropriate to require a party to make some preliminary showing of a need for cross-examination or to place an arbitrary limitation on its length. Since the need for cross-examination and the time required for its completion may vary greatly depending upon the content of a witness's testimony, the control of cross-examination must be left to the sound discretion of the board. The court also concludes that the Public Advocate's proposal that all direct testimony should be in writing and Murwin's proposal that all requests for ordinance interpretation or waiver should be decided within 30 days are not workable in the present context. Some fact witnesses, especially objectors, may not be in a position to reduce their testimony to writing. Some requests for interpretation of a zoning ordinance or for waivers should be determined promptly but others may be more appropriately deferred for consideration at a later stage in the proceedings.

■ On the other hand, certain of the board's procedures which have caused unnecessary delay can be directly addressed by further relief in aid of litigants' rights. Thus, the barrier which the board has erected to informal communications between its experts and those for the applicants can and should be enjoined. Therefore, the board will be ordered to allow representatives of the applicants to confer with the board's

experts outside the context of public hearings. Likewise, the delay in the presentation of expert's reports can be prevented by requiring all opinions offered by the board's experts to be submitted within 30 days of filing a complete application and the reports of experts for other parties to be submitted within 30 days of receipt of the reports of the applicant's experts.

Furthermore, in view of the inordinate length of time which has been taken to complete the proceedings before the board, an outer limit must be placed on the time for decisions on the pending site plan applications. Therefore, the board will be ordered to make a decision on the Sentry Morris application by June 10, 1987, on the Murwin application by July 10, 1987 and on the Cortese application by August 25, 1987. Decisions must be made within 21 days of the completion of the hearings and a memorializing resolution must be adopted within an additional 21 days. With respect to future *Mount Laurel* applications, a decision will be required to be made within either 95 or 120 days, depending on whether *N.J.S.A.* 40:55D–48(c) or *N.J.S.A.* 40:55D–60 applies. In addition, to assure that sufficient time is allowed to develop a complete record within the aforementioned time frames, the board will be ordered to conduct at least two hearings of at least three hours duration on each of the *Mount Laurel* applications during May 1987 and to conduct at least three such hearings during June 1987 and each month thereafter. The above time provisions may be changed only with the consent of the applicant and the Public Advocate or by order of the court.[2] The refusal to give such consent may not be relied upon as a basis for denying an application.

Finally, the various motions to appoint a master and to establish special procedures for the review of denials or approvals with conditions of site plan applications for *Mount Laurel*

[2] A substantial amendment of the site plan application would provide an appropriate basis for seeking an extension of time.

developments are denied. Each case of adverse Board action must be separately reviewed. The appointment of a master or the establishment of other special procedures may turn out to be appropriate in a particular case but plaintiffs have not made an adequate showing that such relief is required at this time.

## II.

Hollow Hill's application for a waiver of the strict application of the buffer requirements of § 95–72 of the township's zoning ordinance was denied. The denial of this waiver was the sole basis for denial of Hollow Hill's site plan application. Since this court concludes that the application for waiver was improperly denied, the board's denial of Hollow Hill's application for site plan approval also must be reversed.

Section 95–72 provides as follows:

Minimum Tract Setback. All developments shall maintain a fifty-foot minimum buffer to all exterior property lines. Said buffer shall be bermed or landscaped and remain unoccupied except for entrance roads or utilities. Buffers may include minimum yard requirements for all single family, two family and townhouse development.

It is undisputed that Hollow Hill's site plan satisfies the 50–foot setback requirement. However, the area of the setback along the southern border of its property is subject to a gas pipeline easement owned by Texas Eastern Transmission Company. The terms of the easement prevent Hollow Hill from landscaping or berming this area. To address the problem posed by this easement restriction, Hollow Hill proposed to dedicate a conservation easement on a 15–foot wide strip of another property it owns to the south of the subject property and to fully landscape that area. This landscaped conservation easement would traverse slightly less than half of the southern boundary of Hollow Hill's property. The landscaping of the remainder of Hollow Hill's southern boundary would be provided on a triangular shaped strip of the subject property, also to the south of the gas pipeline easement, most of which is less than 50 feet in width. The area south of Hollow Hill's property

is also traversed by a bridle path owned by the Morris County Park Commission, which varies in width from 25 to 50 feet and is partially covered by trees and vegetation. Hollow Hill urged before the planning board that its plan for buffering the southern border of its property satisfied the basic purpose of § 95–72 and that it was therefore entitled to a waiver of strict compliance with that section.

In the part of its resolution denying Hollow Hill's application for a waiver, the planning board stated as follows:

The record before the Board is devoid of any testimony that the "objectives of the RH–5 Zone" may not be achieved absent the granting of this waiver. No testimony was presented that the site could not be developed without the waiver and applicant's consultant, David Keller, P.E., testified that it could be done.

Although applicant has offered to provide substantial distance between the *Mount Laurel* structures located on the southerly side of the parcel and the Stinson property which is the most nearly affected land, it cannot provide the vegetation which is so necessary to mitigate the impact of the structures. It is the consensus of the Board that applicant's proposed solution is not adequate. For vegetation to be effective, it must be in close proximity to the structures to be screened. Only in this manner can their intrusive effect be softened.

The buffer requirement contained in § 95–72 is particularly important along the southerly side of the parcel due to the deviation in style of the facades from the GDP application. The *Mount Laurel* housing which is permitted in the zone should only be built in strict conformity with the requirements of the zoning ordinance. Variances should not ordinarily be granted in the *Mount Laurel* tracts except those of the most minor nature or where the purpose of the act would clearly be advanced by a deviation from the requirements. In addition to the foregoing, it is emphasized that the engineering design and zoning requirements were the minimum required for health and safety purposes. They have all been approved by the Superior Court after affirmative recommendations by the Public Advocate and its planning experts.

In this connection the Board notes the conclusions reached in Point III *supra.* The change in the facades of the *Mount Laurel* structures between GDP and site plan make it mandatory that the Zoning Ordinance requirement be adhered to scrupulously. The Board concludes that the granting of the requested waiver would have an adverse effect upon adjoining property and therefore the request should be denied.

This board's denial of Hollow Hill's application for a waiver must be reviewed in light of the *Mount Laurel* doctrine, the settlement agreement between the Public Advocate and Morris Township, the zoning ordinance amendments adopted by Morris

Township to achieve compliance with *Mount Laurel*, and the record developed before the planning board. In its *Mount Laurel II* opinion the Supreme Court stated:

> In order to meet their *Mount Laurel* obligations, municipalities, at the very least, must remove all municipally created barriers to the construction of their fair share of lower income housing. Thus, to the extent necessary to meet their prospective fair share and provide for their indigenous poor (and, in some cases, a portion of the region's poor), municipalities must remove zoning and subdivision restrictions and exactions that are not necessary to protect health and safety. [92 *N.J.* at 258–259]

The settlement agreement between the Public Advocate and Morris Township and the implementing zoning ordinance adopted by Morris Township to achieve compliance with *Mount Laurel* recognize the importance of removing zoning restrictions which are not necessary to protect health and safety. Section 7 of the agreement obligates Morris Township to "take all reasonable steps to foster development" of the *Mount Laurel* housing covered by the agreement. Section I of ordinance 11–84 provides in part:

> These regulations are designed to meet the mandate of Mount Laurel II. Any provisions of this or any other ordinance in conflict with RH–5 and RH–16 zoning regulations and which imposes higher standards not related to health and safety shall be inapplicable.

In implementation of this purpose, section XII of ordinance 11–84 states in part:

> Notwithstanding any provision set forth elsewhere in this ordinance, the Planning Board may waive any engineering and construction design requirements contained in this ordinance, in order to achieve the objectives of the RH–5 and RH–16 zones, provided that the Planning Board shall be satisfied that such a waiver does not jeopardize the public health and safety.

Thus, the thrust of the *Mount Laurel II* opinion, the settlement agreement and Morris Township's implementing ordinances is that zoning and related provisions should be flexibly applied in the areas zoned for *Mount Laurel* housing.

However, the Morris Township Planning Board has taken precisely the opposite approach. Its resolution denying Hollow Hill's application for a waiver from strict adherence to the buffer requirements of the zoning ordinance states:

The Mount Laurel housing which is permitted in the zone should only be built in strict conformity with the requirements of the zoning ordinance. Variances should not ordinarily be granted in the *Mount Laurel* tracts except those of the most minor nature or where the purpose of the act would clearly be advanced by a deviation from the requirements.

The board argues that this restrictive approach is justified because the provision of section XII of ordinance 11–84 that construction and design standards may be waived "in order to achieve the objectives of RH–5 and RH–16 zones" requires an applicant to show that it would be impossible to build *Mount Laurel* housing without the requested waiver. However, this is not what section XII says and it cannot reasonably be construed in this manner. Many normal construction and design standards are impediments to the construction of lower income housing without any single one creating an unsurmountable obstacle to such development. Therefore, the obvious intent of section XII, consistent with the direction in *Mount Laurel II* that "municipalities must remove zoning and subdivision restrictions and exactions that are not necessary to protect health and safety," 92 *N.J.* at 259, is to confer broad authority upon the board to waive such requirements, where this will facilitate the construction of lower income housing and can reasonably be done without jeopardizing public health and safety.

The zoning requirement from which Hollow Hill sought a variance is that the 50–foot buffer to all exterior lines "shall be bermed or landscaped." This requirement is quite general. The ordinance does not specify when a buffer area must be bermed rather than landscaped. It also does not specify what form of landscaping must be provided. A lawn is a form of landscaping and presumably would satisfy the ordinance requirement under appropriate circumstances. See *Random House Dictionary of the English Language* (unabridged ed. 1967) which defines "landscape" as "to improve the appearance of (an area of land, a highway, etc.) as by planting trees, shrubs or grass, or altering the contours of the ground." *Id.* at 805. Indeed, § 95–72 states that "[b]uffers may include minimum

yard requirements for all single family, two family and town-house requirements." There also are a variety of other forms of landscaping, such as flower gardens and low bushes, which may satisfy this ordinance requirement and yet provide limited visual screening of buildings. Moreover, the ordinance permits the buffer area to be occupied by utilities and entrance roads. Therefore, the landscaping requirement of § 95–72 cannot reasonably be construed to require the planting of a 50–foot wide swath of trees or other vegetation which would make a *Mount Laurel* development invisible from adjoining properties. Rather, the evident purpose of this requirement is to require such berming or landscaping as may be appropriate under all circumstances to provide buffering of adjoining properties and to provide the aesthetic benefits of lawns, flowers, shrubs and trees. A determination of what form of berming or landscaping is appropriate in a particular location requires the reasonable exercise of discretion by the planning board.

The combination of the 50–foot yard setback on the subject property, the adjoining bridle path owned by the Morris County Park Commission and the proposed 15–foot conservation easement on Hollow Hill's property on the other side of the bridle path results in a southern buffer which ranges in width from 100 to 140 feet. This is more than double the width of the buffer required by the ordinance. Furthermore, the nearest residences owned by other parties are approximately 168 feet away from Hollow Hill's proposed buildings. These circumstances support the conclusion that less extensive landscaping is required on this part of Hollow Hill's property than if there were immediately adjoining residences.

Hollow Hill proposes to plant three rows of evergreens on the conservation easement. In addition, there is already substantial vegetation on the bridle path owned by the Morris County Park Commission. Therefore, the visual screening between the subject property and the residences to the south which would result from Hollow Hill's buffering plan is more extensive than many landscaping plans which might reasonably have been

implemented on the subject property were it not for the utility easement.

Hollow Hill presented expert testimony by its planning expert, Peter Abeles, and its engineering consultant, David Keller, with respect to the adequacy of this plan for buffering its southern boundary. Abeles expressed the opinion that the proposed conservation easement together with the remainder of the buffer area would provide a buffer "at least equivalent" to that required by the zoning ordinance. Keller stated that "the applicant has gone above and beyond really what the spirit of the ordinance is in providing probably a more adequate and better screen than if a 50 foot buffer had existed here without a gas easement on it and was planted or bermed in the conventional manner." No expert testimony was presented by the technical consultants to the board or on behalf of the objectors that Hollow Hill's buffer proposal was inadequate. In fact, the board's planning expert, Harvey Moskowitz, advised the board that conservation easements are not unusual and suggested that such an easement would be a suitable means of providing an adequate buffer for the southern boundary of the property. The only criticism of Hollow Hill's proposed buffer came from objectors, principally nearby homeowners, who made no comparison between Hollow Hill's buffering and landscaping proposal and the landscaping which reasonably could have been required on Hollow Hill's own property in the absence of the utility easement. Therefore, the denial of Hollow Hill's application based solely on the comments of these objectors was arbitrary and capricious.

■ Furthermore, the board's decision cannot be justified by the fact that Hollow Hill withdrew an architectural rendering of the proposed development from its site plan application. No authority has been cited for requiring the submission of an architectural rendering as part of an application for approval of a site plan for a *Mount Laurel* development in Morris Township. *Cf. Morristown Road Assoc. v. Mayor of Bernardsville,*

163 *N.J.Super.* 58 (Law Div.1978). Furthermore, even if the board could assert authority with respect to architectural plans under appropriate circumstances, the withdrawal of such plans did not provide a rational basis for denying Hollow Hill's application for approval of its buffering proposal. Rather, as previously indicated, this plan was more than adequate to satisfy the objectives of the buffer requirement of the zoning ordinance, without imposing special architectural design requirements upon the developer.

Accordingly, the board's resolution denying Hollow Hill's application for site plan approval must be reversed. However, all parties recognize that there are a number of conditions which may be attached to the grant of site plan approval. Indeed, Hollow Hill agreed to some conditions during the hearing. The subjects with respect to which conditions may be appropriate include improvements to Kitchell Road and Woodland Avenue, the addition or realignment of paved areas required for the safe movement of emergency vehicles and the addition of certain sidewalks and curbing.[3] Hollow Hill urges that the power to impose these conditions should be withdrawn from the board in view of its past handling of Hollow Hill's application and that the court should determine which conditions to impose based upon the recommendations of a master. The court probably has the power to grant such relief. *Mount Laurel II*, 92 *N.J.* at 285–290. However, the Legislature has conferred responsibility upon the board to pass upon site plan applications. This responsibility should be preserved, if at all possible. Furthermore, the board is already very familiar with Hollow Hill's site plan. Therefore, it should be able to decide expeditiously what conditions may be appropriate. Under these circumstances, this court is satisfied that the board should determine what conditions to impose upon approval of this site

---

[3] All such conditions must be based on the evidence presented at the hearing on the application. *See Sander v. Planning Bd. of Tp. of Warren*, 140 *N.J.Super.* 386, 394 (App.Div.1976); *N.J.S.A.* 40:55D–10(d).

plan application, subject to judicial review. Accordingly, the order of the planning board denying site plan approval is reversed and the matter is remanded to the board to adopt a resolution approving the site plan application subject to such conditions as the board may determine to be appropriate. The proceedings on remand, including the adoption of a memorializing resolution, shall be completed by June 15, 1987.